UNITED STATES of America, Appellee,

v.

**Lester Joseph NEVITT, Appellant.**

**No. 77–1975.**

United States Court of Appeals,
Ninth Circuit.

Oct. 20, 1977.

---

Michael Tryon, Asst. Federal Public Defender, D. Ariz., argued, Phoenix, Ariz., for appellant.

Kenneth L. Fields, Asst. U. S. Atty., argued, Phoenix, Ariz., for appellee.

Before BROWNING and HUFSTED-LER, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Nevitt appeals from his conviction upon multiple charges of transporting and conspiring to transport in interstate commerce falsely made securities in violation of 18 U.S.C. §§ 371, 2314. His former codefendant Snider pleaded guilty and testified against him in accordance with her plea bargain. There are two issues on appeal: (1) Did the district court err in forbidding Nevitt to impeach Snider with a prior felony conviction, and (2) did the district court err in refusing to give a jury instruction

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

which incorporated Nevitt's version of the facts? We hold that the district court committed reversible error in preventing the impeachment of the Government's witness, but there was no error in rejecting Nevitt's proffered jury instruction.

Snider and Nevitt met in March of 1975 when both were working for the Fred Harvey Company in Grand Canyon, Arizona. She was separated from her husband. The two began living together and held themselves out as husband and wife. She learned how to operate the CTWX machine in a manner which permitted her to falsify TWX messages for the issuance of money orders. According to her testimony, she and Nevitt agreed that she would type false TWX messages naming as payees of money order acquaintances of theirs who would then cash the money orders and give the proceeds to the two of them. She would ask women to become payees, using the story that she did not want her husband to know that she was receiving the money. Nevitt would undertake the same cover story when he contacted men to become fictitious payees. One of the charges involved the issuance of a money order payable to one Palmer for $800, pursuant to a fake TWX message that Snider had typed. Palmer testified that, responding to Nevitt's request, he agreed money could be wired in his name so that Nevitt's wife would not find out. He identified a money order as the one that he had picked up at Western Union and cashed for Nevitt. Palmer, and other fictitious payees, denied that they knew that the money orders were fraudulent.

Nevitt's story was that he, too, did not know that the money orders were fraudulent. He said that Snider told him that her uncle was going to send her some money and she showed him a letter, purportedly from her uncle, saying that he was going to give her $9,000 for a wedding present. He testified that Snider convinced him that the money should be sent in other peoples' names to prevent "everyone" from knowing the source of the money. This was the same story that Snider initially gave to FBI agents when they questioned her about the money orders. The following day, she changed the story and told FBI agents that Nevitt fully participated in the fraud and that both of them had concocted the "uncle" letter. About this time, Snider and Nevitt separated. Nevitt testified that Snider told him that if he did not come back to her, she would implicate him in her money order scheme.

The Government's case turned upon which witness, if either, the jury believed.

Before Snider testified, Nevitt's counsel moved to impeach her with a prior felony conviction for a bomb threat. The district court refused to permit the impeachment because "[i]t doesn't go to falsity and you don't have a copy of it to prove it, so the answer is no." The district court misread Rule 609(a) of the Federal Rules of Evidence, and misapplied the rule to the impeachment of a government witness by the defendant.

Rule 609(a) provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involves dishonesty or false statement, regardless of the punishment."

■ The defendant may always use prior felony convictions of a prosecution witness. "Prejudice to the witness stemming from revelation of his past was rejected by Congress as a factor to be considered by the courts. Confrontation problems are thus avoided." (3 Weinstein's Evidence ¶ 609[03], p. 609–66 (1976). *See, e. g. Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).) The district court does not have discretion to weigh the probative value of a government witness' prior felony conviction against its prejudicial effect on the witness or the Government's

case. Rule 609(a) limits the balancing test to determining prejudicial effect to the defendant.

 The fact that the prior felony conviction in this case did not reflect upon Snider's veracity is irrelevant.[1] As Judge Weinstein points out, "[s]ince convictions are more freely admissible against a prosecution witness . . . the limitation to felonies involving *crimen falsi* is significant only in the case of defense witnesses." In short, Rule 609(a)(2) does not limit the use by the defendant of a government witness' prior felony conviction to impeach the witness. Moreover, Rule 609(a) does not require a defendant to produce a public record of the conviction to lay the foundation for a cross-examination of the Government's witness. The rule itself is clear that the public record of a prior conviction is not necessary to prove the conviction. As the Senate Judiciary Committee Comments state: "It is to be understood, however, that a court record of a prior conviction is admissible to prove that conviction if the witness has forgotten or denies its existence." (Comment to Federal Rules of Evidence, Rule 609, 28 U.S.C.A. at 286.)[2]

 The Government contends that, under Rule 103(a) (Fed.Rules Evid.), Nevitt cannot complain of any error in the exclusion of Snider's felony conviction because he made no offer of proof. None was necessary. The court was fully aware of the substance of the excluded evidence and no violation of the rule thus appears. Moreover, the application of Rule 103(a) to a criminal defendant's examination of a government witness is restricted by the special limitations imposed by the due process and confrontation clauses of the Federal Constitution. (*E. g.*, *Davis v. Alaska, supra*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347;

*Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 77, 75 L.Ed. 736 (1931).)

 We turn to the contention that the district court erred in denying a jury instruction which Nevitt describes as an instruction upon his theory of the case. A defendant is entitled to instruction upon his theory of the case if the record contains evidentiary support for the theory and the theory is supported by law. (*United States v. Noah*, 475 F.2d 688 (9th Cir. 1973).) The instruction that Nevitt offered, however, was not in the form of a statement of appropriate principles of law for the jury to apply to the facts as the jury found them. Rather, the instruction was in the form of a narrative recitation of Nevitt's version of the facts. We rejected a similar contention in *United States v. Hall;* 552 F.2d 273 (9th Cir. 1977).

REVERSED.

---

1. We need not and do not reach the question in this case whether the time limits described in Rule 609(b) are applicable to a defendant's use of a felony conviction to impeach a government witness because the felony involved in this case was not more than ten years old. We did not reach this question in *United States v. Dixon*, 547 F.2d 1079 (9th Cir. 1976) because the convictions in question were less than ten years old and, in addition, the defendant was using

the convictions to impeach a government informant, who had not been called by the Government, but who was called by the defense. Both the existence of the prior conviction and defense counsel's good faith in presenting it are unquestioned in this case.

2. We are, of course, unconcerned in this case with prosecutorial conduct in impeaching a criminal defendant.