[No. 56989-4. En Banc. March 21, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED
L. RAY, *Petitioner*.

532

*Walter O. Peale*, for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for respondent.

DORE, C.J.—Ray appeals his conviction of first degree incest because he alleges that the trial court erroneously suppressed the testimony of his defense witness, Bogart. We agree and reverse and remand for a new trial.

## FACTS

On March 19, 1987, John Miller called the police and reported that the previous evening he saw his father, defendant Ray, having anal intercourse with Miller's sister, D., in the bathroom. Miller later described to the police in a

written statement what he saw on the evening of March 18, and he told the police officer that he saw Ray fondle D. on other occasions.

When the police interviewed D., she denied that the incest occurred and suggested that Miller called the police because he was angry with Ray. D. later called the police, however, reported that the incest did occur, and agreed to submit a written statement.

D. told police that she moved into her father's home in January 1987. On March 18, D. went to the beach and when she returned home, went into the bathroom and took a shower. D. had just finished showering, and was brushing her teeth, when Ray came in. D. believed Ray wanted to shave, and let him into the room. Ray stood on one side of the sink and D. stood on the other. As D. put the cap on the toothpaste, her towel slipped off and Ray commented that D. "looked good" nude. When D. bent over to pick up the towel, Ray reached across and tried to place his finger in her rectum. D. stood up, put the towel around her and left the bathroom. As D. left the bathroom, she almost ran into Miller, who was standing outside the door.

Police interviewed Ray on April 1. Ray stated that on March 18, he got home from work, spoke with Miller about Miller's getting a job, then left for a 4 p.m. appointment. Ray returned from his appointment at approximately 5:30 p.m. and retired for the night before 10 p.m.

The State charged Ray with one count of incest in the first degree. Ray pleaded not guilty. In June 1987, Ray filed an omnibus application which stated that Ray might call Janet Bogart as a witness at trial. The police reports in the record state that: as of April 1, Bogart had been staying at Ray's house for approximately 2 weeks; she heard that Miller got mad at Ray and "reported something to the police to get even"; she heard that D. moved into Ray's home to spend time with him; and that Ray had not touched his other children except to spank them. Clerk's Papers, at 37.

In mid–July, D. and Miller separately called the prosecutor, informed him that they were living with their father, and asked that he drop the charges against Ray. On July 22, Miller and D., together, again called the prosecutor. They asked that the prosecutor drop the charges against Ray and that the prosecutor speak with Ray because he "refused to believe that [D.] and . . . Miller . . . tried to get the charges dropped. [D.] stated that . . . [Ray] was presently in the room . . . listening to . . . the conversation." Clerk's Papers, at 105–06. At trial, the State moved to exclude evidence of D.'s convictions for arson and for theft. Ray argued that the theft conviction was admissible to impeach D., because it went to D.'s credibility and honesty. The court concluded that theft was not a crime involving dishonesty, under ER 609(a)(2), and excluded evidence of D.'s theft conviction.

Ray moved to exclude evidence of prior incidents of sexual contact between himself and D. He alleged that the evidence was not relevant or admissible "under [ER] 402 . . . [or] 404(b)"; the prior acts were too remote in time from the incest alleged in 1987; and that there was no evidence of a common scheme or plan. Report of Proceedings, at 65. The court admitted the evidence of prior contact because it showed Ray's lustful disposition toward D.

On direct examination, Miller testified that he saw Ray have intercourse with D. On cross examination, Miller denied that he saw D. and Ray have intercourse; stated he could not see much of the bathroom from where he was standing; and testified that he called the police because he was upset with Ray. On redirect, Miller stated that he saw Ray "humping" D. and that the written statement he gave the police was true. Miller testified that he lied during cross examination, to protect his father. Report of Proceedings, at 36–39 (Sept. 8, 1987). On recross, Miller reaffirmed that he saw D. and Ray have intercourse.

D. testified that she lived with Ray until she was 8 years old. From age 8 to 17 years, D. lived with foster or adopted parents, and she and her brothers visited Ray. In January

1987, D. moved into Ray's home. During January and February, D. slept on Ray's couch. Some mornings, as Ray left for work, he rubbed D.'s breasts or buttocks. D. did not complain to anyone of Ray's behavior.

D. testified that on March 18, Ray entered the bathroom and had anal intercourse with her, as related in her statement to the police. D. acknowledged that she "went back and forth" about what occurred on March 18, but stated that she initially denied the incest because she was embarrassed and nervous. Report of Proceedings, at 94, 102, 110, 114, 120, 127 (Sept. 8, 1987). D. testified that she asked the prosecutor to drop the charges against Ray because she was scared.

D. recalled three earlier incidents of sexual contact with Ray. Before D. went into foster care, Ray picked her up and touched her "up top". Report of Proceedings, at 95–96. On another occasion, Ray took D. and her brothers to the movies. He sent the boys out to buy a snack, then pulled D. onto his lap and put his hand under her shirt. Finally, when D. was 9 or 10, and in foster care, she and her siblings visited Ray on weekends. When they visited, Ray gave each of the other children a treat, but usually hid D.'s treat in his bedroom, then followed her upstairs when she went to find it. Once, Ray sat on the bed next to D. and he touched her "on top" and "real quick" on her vagina. Report of Proceedings, at 100 (Sept. 8, 1987).

At the close of the State's case, the prosecutor interviewed Janet Bogart. The prosecutor reported to the court:

> The defense provided me with a summary of their proposed witnesses' testimony . . . It recites Janet Bogart will testify she never saw Fred make any sexual advances or contact with [D.] and that she had a sexual relationship with Ray at the time he was supposed to have had contact with [D.].
>
> I've just interviewed Bogart and she's now telling me that she was there that night, that she was a witness to all the events of that night, and is laying out in great detail what she said happened that night.
>
> . . . .
> . . . [T]hat was never revealed to me. Therefore, I could not examine my witnesses as to who else was in the house. . . .

I'm asking that she not be allowed to testify . . . I'm . . . very surprised after my case is . . . complete, I find out . . . there's somebody who's going to be an alibi witness, basically.

. . . I'm surprised because the summary which I was given . . . doesn't mention anything about her being there that night or witnessing . . . the incident in the bathroom. The police reports recite she was living there, but not that she was home the night this happened . . . [S]he . . . has been elevated from living there to being an eyewitness . . ..

Report of Proceedings, at 138, 140 (Sept. 8, 1987).

Defense counsel argued that Bogart's name was in the police reports, the prosecutor had the name and address, and that he could have spoken with her before the trial.

The court "assumed" Bogart would testify that she was in the house at the time "observing [D.] and [Ray] . . . in the bathroom" and that she "'[W]as there and observed the incident and . . . the sexual contact did not take place.'" Report of Proceedings, at 141, 143 (Sept. 8, 1987). The court found, however, that defendant's summary omitted crucial information, in violation of CrR 4.7, which governs discovery, and it suppressed Bogart's testimony.

Ray, the only defense witness, testified that on March 18, he finished work, paid some bills downtown, and got home at approximately 5:30 p.m. He, Bogart, Miller, and D. went to the beach together. When they returned from the beach, Ray made his lunch then sat in the living room with Miller, while D. showered. Bogart watched television in another room. Ray testified that he entered the bathroom after D. came out, that he and D. were never in the bathroom together, that he never saw D. nude, and that he retired soon after shaving. Ray did not recall any instances of sexual contact with D. and he denied leaving "treats" for D. in his bedroom.

The jury convicted Ray of first degree incest. Ray filed a "Motion for Arrest of Judgment and New Trial" in which he alleged that the trial court erroneously suppressed Bogart's testimony and that the suppression denied him a fair trial. Ray also argued that trial counsel's failure to

preserve Bogart's testimony denied him effective assistance of counsel.

Ray submitted the affidavit of Janet Bogart with his motion for new trial. In her affidavit, Bogart stated that she was in Ray's house and she remembered the evening of March 18. Bogart recalled that on March 18, she was in the living room playing cards and stated that she was aware, at all times, of where Ray and D. were. Bogart reported that D. and Ray were never in the bathroom together and that Ray entered the bathroom only after D. came out. Bogart stated that D. admitted that she lied to the police about the alleged incest and that she reported the incest to "get back at" Ray and to "show [Miller] how wrong he had been to call the police." Clerk's Papers, at 50. Bogart further stated that she gave Ray's trial attorney her phone number and offered to talk to him and that she overheard Ray tell his attorney that Bogart was available as a witness. Clerk's Papers, at 52. She reported that Ray's attorney spoke with her about the events disputed here "just for a few minutes before we went into the court room", but never before the trial began. Clerk's Papers, at 52.

The trial court acknowledged that it had a "general idea" of what defense counsel wanted Bogart to do, and assumed that Bogart would try to exonerate Ray "on the basis of . . . [being] an eyewitness to the situation", but stated that it did not have sufficient information to know "in detail" what Bogart's testimony would have been. Report of Proceedings, at 34 (Nov. 25, 1987). The court again refused to admit Bogart's testimony and it denied Ray's motion for new trial.

### SUPPRESSION OF RAY'S TESTIMONY

Superior Court Criminal Rule 4.7(b)(1) provides, in part, that:

[T]he defendant shall disclose to the prosecuting attorney the following material and information within the defendant's control no later than the omnibus hearing: the names and addresses of persons whom the defendant intends to call as

witnesses at the . . . trial, . . . and the substance of any oral statements of such witness.

CrR 4.7(h)(7) provides, in part, that:

(i) [I]f . . . during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule . . ., the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

(ii) [W]illful violation by counsel of an applicable discovery rule . . . may subject counsel to appropriate sanctions by the court.

█ Suppression of evidence is not one of the sanctions available for failure to comply with discovery rules and the trial court, therefore, erred when it suppressed Bogart's testimony because the court believed Ray violated CrR 4.7(b). *State v. Thacker,* 94 Wn.2d 276, 280, 616 P.2d 655 (1980).

### RAY'S OFFER OF PROOF

██ The State contends, however, that even if the court improperly excluded Bogart's testimony, pursuant to CrR 4.7(h)(7), Ray did not make an adequate, timely offer of proof, as ER 103(a)(2) requires when error is predicated on a ruling that excludes evidence. Absent an adequate offer of proof, the State argues, this court cannot review the propriety of the court's suppression order. An offer of proof serves three purposes: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review. *Mad River Orchard Co. v. Krack Corp.,* 89 Wn.2d 535, 537, 573 P.2d 796 (1978); *State v. Negrin,* 37 Wn. App. 516, 525, 681 P.2d 1287, *review denied,* 102 Wn.2d 1002 (1984). *See also State v. Williams,* 34 Wn.2d 367, 384, 386–87, 209 P.2d 331 (1949). The offer of proof allows the trial court to properly exercise its discretion when reviewing, "revaluating [*sic*]", and, if necessary, revising its rulings. *Cameron v. Boone,* 62 Wn.2d

420, 425, 383 P.2d 277 (1963). It is the duty of a party offering evidence

> to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling . . ..

*Mad River Orchard Co. v. Krack Corp.,* 89 Wn.2d 535, 537, 573 P.2d 796 (1978) (quoting *Tomlinson v. Bean,* 26 Wn.2d 354, 361, 173 P.2d 972 (1946)). An offer of proof is not required, however, if the substance of the excluded evidence is apparent from the record. *See Williams,* at 384, 386; ER 103(a)(2). Federal courts, interpreting identical language in Fed. R. Evid. 103, have also concluded that if the substance of the excluded evidence is apparent either from the questions asked, the context in which the questions are asked, "or otherwise", then a formal offer of proof is not necessary. *United States v. Nevitt,* 563 F.2d 406, 409 (9th Cir. 1977); *United States v. Sweiss,* 814 F.2d 1208, 1211 (7th Cir. 1987); *United States v. Gonzalez,* 700 F.2d 196, 201 (5th Cir. 1983).

Ray's attorney did not make an offer of proof that informed the court of the testimony he wished to offer: rather, it was the prosecutor who summarized to the court Bogart's proposed testimony. The extended colloquy between the prosecutor, defense attorney, and the court, however, revealed the substance of the evidence that Ray wished to introduce and the theory under which it was offered. Although the trial court stated that it did not know "in detail" to what Bogart would have testified, ER 103(a)(2) does not require that the details of the testimony be apparent. The rule requires only that the substance of the testimony be apparent from the record. State law, interpreting ER 103(a)(2), establishes that a formal offer of proof was not necessary in this case, because the colloquy of the parties and the court, on the record, revealed the substance of the proposed testimony.

█ Even if a formal offer of proof was necessary, the affidavit that Ray submitted with his motion for new trial

constituted a timely offer of proof. Washington authority supports the conclusion that a defendant may preserve for review an erroneous suppression ruling, made pursuant to CrR 4.7(h)(7), by submitting the issue in motion for new trial. In *State v. Fagalde,* 85 Wn.2d 730, 539 P.2d 86 (1975), the court held that a defendant who objected at trial to the admission of a physician's testimony about statements that the defendant made to the doctor during treatment preserved any error for review, even though the defendant did not cite the statute governing doctor–patient privilege in his objection. The court stated that:

> It is the . . . rule that in order to preserve error, counsel must call the alleged error to the court's attention at a time when the error can be corrected. While arguments [concerning] admission of evidence should be advanced at the time the evidence is offered, a party is not necessarily precluded from raising the question on appeal if his counsel brought it to the court's attention on a motion for new trial. . . . [I]t is the duty of counsel to call to the court's attention, either during the trial or in a motion for a new trial, any error upon which appellate review may be predicated . . . to afford the court an opportunity to correct it.

85 Wn.2d at 731. The defendants in *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979) alleged that they did not validly waive their right to a jury trial, because they did not submit written waivers of their rights, as required by CrR 6.1(a). The *Wicke* court stated that:

> In order to preserve error for . . . appeal, . . . the alleged error must be called to the trial court's attention at a time that will afford the court an opportunity to correct it. Ideally, this will be done during the course of trial, but the error may be raised in a motion for a new trial.

(Citation omitted.) 91 Wn.2d at 642. It reasoned that the rule prevented defendants from going to trial, speculating about the outcome, and if they received an adverse result, claiming error for the first time on appeal.

Similarly, the defendants in *In re Lee,* 95 Wn.2d 357, 623 P.2d 687 (1980) collaterally attacked the finding that they were habitual criminals because they alleged that the convictions which supported the habitual criminal finding were

based on constitutionally deficient guilty pleas. 95 Wn.2d at 358. The court, noting that the defendants raised no objection at trial to the admissibility of evidence of their prior convictions, stated that:

[A]n objection not raised in the trial court normally will not be considered on appeal. . . . [and] precludes attacking the use of the evidence on appeal. However, if a challenge is raised as late as in a motion for a new trial, it gives the trial court an opportunity to act upon it and preserves the issue on appeal.

95 Wn.2d at 363.

Finally, in *State v. Smith,* 104 Wn.2d 497, 500, 707 P.2d 1306 (1985), this court concluded defendant could not attack the voluntariness of a guilty plea used to establish his habitual criminal status. It observed that the defendant possessed, but did not take advantage of the "numerous opportunities" to challenge the voluntariness of his guilty plea, including the "opportunity [that] existed in a motion for a new trial". 104 Wn.2d at 507. Based on the policy consideration that a defendant may not "delay his challenge to await the result of [his] habitual criminal proceeding . . . [then] raise the issue initially on appeal and gain a remand if the State had failed to incorporate voluntariness into its original case", this court concluded that defendant's challenge could not be raised. 104 Wn.2d at 506, 507.

The offer of proof in support of Ray's motion fully informed the court of the nature of the evidence and the theory under which it was offered. It called the trial court's attention to the reason why Ray thought the evidentiary ruling was erroneous, and allowed the trial court an opportunity to review, reevaluate, and, if necessary, to correct its earlier ruling. Washington authority and the purposes that an offer of proof serve support the conclusion that Ray submitted a timely offer of proof.

*State v. LeFever,* 102 Wn.2d 777, 786, 690 P.2d 574 (1984), the case upon which the State relies, does not compel a different result. In *LeFever,* the defendant moved to exclude evidence of his prior convictions. The court admitted the evidence for purposes of impeachment, under ER

609(a)(1). 102 Wn.2d at 785. Defendant did not testify at trial and was convicted of three counts of robbery. 102 Wn.2d at 780. In his motion for a new trial, defendant submitted an affidavit which stated that he did not testify at trial because of the potential unfair prejudice he feared cross examination would cause. The trial court denied LeFever's motion for new trial.

This court found that LeFever's offer of proof was untimely because:

> [when] [a] defendant elects not to testify following a ruling under ER 609, defendant must ensure that the record includes a declaration of his intention to testify and an adequate offer of proof . . . to preserve any error for appellate review.

*State v. LeFever*, 102 Wn.2d 777, 785, 690 P.2d 574 (1984) (quoting *State v. Koloske*, 100 Wn.2d 889, 897, 676 P.2d 456 (1984)).[1] We held that if the defendant elects not to testify, then an offer of proof must be made at the time of the ER 609 ruling, to preserve error for appeal. 102 Wn.2d at 786. This court reasoned that only if an offer of proof were made at the time of the ER 609 ruling could the trial court evaluate the importance of defendant's testimony, perform the balancing process that ER 609(a)(1) requires, and prevent a defendant who did not intend to testify from seeking "a ruling in order to provide an additional ground for appeal in case of conviction, thereby . . . abusing ER 609." 102 Wn.2d at 786.[2]

---

[1]*State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989) overruled *Koloske* and *LeFever* to the extent that they established that a defendant's timely offer of proof properly preserved alleged error in court rulings.

[2]In *State v. Brown*, 113 Wn.2d 520, 540–41, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989), this court further modified the requirements for an offer of proof under ER 609(a)(1). It held, prospectively, "that in order to preserve alleged error in a ruling admitting prior conviction evidence for impeachment purposes under ER 609(a), a defendant must take the stand and testify." 113 Wn.2d at 540. The court overruled *LeFever* "to the extent [it] established that by a timely offer of proof a defendant could properly preserve alleged error in trial court rulings on admissibility of prior conviction evidence for impeachment purposes". 113 Wn.2d at 540.

The concerns that underlay the *LeFever* holding, and the cases that followed, are not applicable here. In this case, the defendant testified at trial. The trial court's ruling was not pursuant to ER 609 and the court here did not have to perform the on–the–record balancing that ER 609 requires. *Brown*, 113 Wn.2d at 533. Further, the evidence Ray offered was exculpatory and he arguably would not have the same incentive to "abuse ER 609" as the defendant trying to exclude damaging information about his past criminal history. *LeFever* does not compel the conclusion that Ray's posttrial offer of proof was untimely.

The trial court erred when it suppressed Bogart's testimony. That error, if harmless, does not require reversal. Harmless error is error which is trivial, formal, or academic. *State v. Thacker,* 94 Wn.2d 276, 283, 616 P.2d 655 (1980).

Ray's defense was that he was never in the bathroom at the same time as D.: rather, he was in the living room watching television. The testimony of the complaining witness, D., and the State's eyewitness, Miller, were contradictory on major and minor points, and the testimony of an eyewitness that supported defendant's theory of the case could have influenced a reasonable juror. If the jury found Bogart credible it might have acquitted the defendant. The trial court's error, suppressing Bogart's testimony, was not harmless and requires reversal.

### Theft as a Crime of Dishonesty

Ray next contends that the trial court erred when it excluded evidence of D.'s conviction for first degree theft. Ray argued that the evidence of D.'s conviction was admissible under ER 609 because it went to D.'s honesty. The trial court concluded that the evidence was inadmissible because, under *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984), theft is not a crime that involves dishonesty. We disagree and take this opportunity to overrule *Burton* and to clarify the confusion engendered by the plurality opinion

in *State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989).

In *Burton,* the State charged the defendant with one count of first degree robbery. The trial court admitted evidence of defendant's prior convictions for petit larceny and shoplifting, to impeach the defendant, because it reasoned that each of these crimes involved "dishonesty", under ER 609(a)(2). This court reversed the conviction, because it held that petit larceny and shoplifting were not "crimes which contain elements in the nature of *crimen falsi* and which bear *directly* on a defendant's propensity for truthfulness." 101 Wn.2d at 7.

The court, in *Brown,* addressed whether evidence of the defendant's prior misdemeanor theft convictions was admissible under ER 609(a)(2). Four justices concluded that "taking another's property by theft, . . . involves dishonesty and . . . [theft] crimes are per se admissible for impeachment purposes under ER 609(a)(2)." 113 Wn.2d at 552–53.[3] These justices found that: (1) *Burton's* reliance on federal legislative history and case law that interpreted Fed. R. Evid. 609(a)(2) was misguided; (2) federal law does not bind this court; (3) state courts interpreting evidentiary rules similar to Washington's ER 609(a)(2) have concluded that theft crimes involve "dishonesty"; (4) theft involves stealing and, therefore, falls within the ordinary meaning of the term "dishonest"; and that (5) admission of prior theft convictions meets the purposes of ER 609(a): allowing impeachment evidence "to enlighten the jury with respect to the defendant's credibility as a witness." 113 Wn.2d at 552, 548–54. Five justices rejected a rule that crimes of theft are per se "dishonest" and endorsed the reasoning in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984) and *State v. Newton,* 109 Wn.2d 69, 77–78, 743 P.2d 254 (1987).

---

[3]*State v. Brown,* 111 Wn.2d 124, 148, 761 P.2d 588 (1988), (*Brown* I) held that theft was a crime involving "dishonesty" for purposes of ER 609(a)(2). The court reconsidered *Brown* I, but adhered to its opinion in *State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989) (*Brown* II).

These justices concluded that only theft crimes which involve active deception are admissible under ER 609(a)(2). 113 Wn.2d at 558–60.

Upon further reflection of the language in our ER 609(a)(2), and the purposes that the Rules of Evidence serve, we believe the *Burton* rule ill advised. We conclude, as have many of our sister states,[4] that crimes of theft involve dishonesty and are *per se* admissible for impeachment purposes under ER 609(a)(2). The sound reasoning of Justice Brachtenbach in *Brown* warrants repetition here:

> [W]e return to basics. We begin with the principle that, while as the author of the rule we are in a position to interpret the meaning sought to be conveyed by the rule, we approach our rules as though they had been drafted by the Legislature and give the words their ordinary meaning. The term "dishonest" implies the act or practice of telling a lie, or of cheating, deceiving, and stealing. Crimes of theft involve stealing, and are clearly encompassed within the term dishonest. Moreover, we agree with former Chief Justice Burger's statement . . . that "[i]n common human experience acts of deceit, fraud, cheating, or stealing, . . . are universally regarded as conduct which reflects adversely on a man's honesty and integrity."
>
> . . . The act of taking property is positively dishonest. . . . [t]he sole purpose of impeachment evidence is to enlighten the jury with respect to the defendant's credibility as a witness. This purpose is met by allowing admissibility of prior convictions evidencing dishonesty, regardless of the fact that the conduct had as its purpose the taking of another's property.

(Citations omitted.) 113 Wn.2d at 551–52. We hold that crimes of theft, per se, involve dishonesty and that the trial

---

[4]For a thorough review of the states with evidence rules similar to our ER 609(a)(2), which deem theft a crime of dishonesty, see cases cited in *State v. Brown,* 113 Wn.2d at 550, including: *State v. Page,* 449 So. 2d 813 (Fla. 1984); *State v. Melendrez,* 91 N.M. 259, 572 P.2d 1267 (Ct. App. 1977); *State v. Tolliver,* 33 Ohio App. 3d 110, 514 N.E.2d 922 (1986); *Kennedy v. State,* 640 P.2d 971 (Okla. Crim. App. 1982); *State v. Gallant,* 307 Or. 152, 764 P.2d 920 (1988); *Commonwealth v. Bells,* 373 Pa. Super. 57, 540 A.2d 297 (1988); *State v. Butler,* 626 S.W.2d 6 (Tenn. 1981).

Other states and state courts which deem theft a crime of dishonesty include: *Taylor v. Village Commons Plaza, Inc.,* 164 Ill. App. 3d 460, 517 N.E.2d 1164, 1167 (1987); *Geisleman v. State,* 274 Ind. 241, 410 N.E.2d 1293, 1296 (1980); *State v. Thomas,* 220 Kan. 104, 551 P.2d 873, 876 (1976); *State v. Chubbuck,* 406 A.2d 282, 283 (Me. 1979); *State v. Johnson,* 10 Ohio App. 3d 14, 460 N.E.2d 625, 628–29 (1983); *Cline v. State,* 782 P.2d 399, 400 (Okla. Crim. App. 1989).

court erred when it excluded evidence of D.'s conviction of first degree theft.

## STANDARD OF REVIEW

 We also wish to clarify any confusion concerning the standard of review applied to erroneous ER 609 rulings. The same nonconstitutional harmless error standard that applies to ER 404 rulings also applies to ER 609(a) rulings. A ruling under ER 609 is not reversible error "'. . . unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith,* 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). Uniform application of the nonconstitutional error standard does not impair a defendant's right to testify or to remain silent: the defendant must make the same "decision every criminal defendant must ultimately reach; that is, whether to testify." 113 Wn.2d at 561, 560 (Pearson and Dore, JJ., concurring). Adopting the nonconstitutional error standard simply reenforces the fact that "a defendant has no constitutional right to testify free of . . . impeachment" by his prior convictions. 113 Wn.2d at 554, 555. Further, as we noted in *Brown,* a nonconstitutional error standard also obviates anomalous or contradictory results that might arise if two evidentiary standards, a nonconstitutional standard under ER 404 and a constitutional error standard under ER 609, were applied to the same ruling in a case. 113 Wn.2d at 555. Finally, the Supreme Court concluded that erroneous decisions under ER 609(a) do not reach constitutional dimension. *Luce v. United States,* 469 U.S. 38, 43, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984); *see also Carrasquillo v. Kirk,* 677 F. Supp. 193, 194 (S.D.N.Y. 1988).

## EVIDENCE OF PRIOR SEXUAL CONTACT

Ray next alleges that the court erred when it admitted D.'s testimony that Ray initiated sexual contact with her on three other occasions before the March 1987 incest. He contends that this evidence of sexual contact with D. prior

to March 1987 is irrelevant, too remote in time to the events alleged in 1987, and is not corroborated. Ray is mistaken.

■ Rule of Evidence 404(b) provides in part that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes . . ..

This court has consistently recognized that evidence of collateral sexual misconduct may be admitted under ER 404(b) when it shows the defendant's lustful disposition directed toward the offended female. *State v. Camarillo,* 115 Wn.2d 60, 70, 794 P.2d 850 (1990); *State v. Ferguson,* 100 Wn.2d 131, 133–34, 667 P.2d 68 (1983); *see also State v. Medcalf,* 58 Wn. App. 817, 822–23, 795 P.2d 158 (1990) (misconduct directly connected to the offended female, which does not just reveal defendant's general sexual proclivities, is admissible). In *Ferguson,* 100 Wn.2d at 134 (quoting *State v. Thorne,* 43 Wn.2d 47, 60–61, 260 P.2d 331 (1953)), the court emphasized that:

Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged.

. . . The important thing is whether it can be said that it evidences a sexual desire for the particular female.

"The kind of conduct receivable to prove this desire at such . . . subsequent time is whatever would naturally be interpretable as the expression of sexual desire.

(Citation and italics omitted.) The limits of time over which evidence may range lies within the discretion of the trial court. *Ferguson,* 100 Wn.2d at 134–35. The testimony is admissible even if it is not corroborated by other evidence. *See Camarillo,* at 66, 68 (uncorroborated testimony about two prior incidents of sexual contact is admissible).

The evidence of prior sexual contact here is directly connected to "the offended person", D., and reveals Ray's lustful inclination toward D. While the incidents alleged occurred approximately 10 years before the crime charged here, the Court of Appeals correctly noted that D. was in

foster care during that time, and Ray, thus, could not approach her. In these circumstances, the trial court did not abuse its discretion when it found that the alleged conduct was not too remote in time to the incest alleged in 1987 to have probative value and it correctly admitted D.'s testimony about the prior incidents of sexual contact with Ray.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Ray next alleges that he received ineffective assistance of counsel because his trial attorney did not prepare an adequate witness list and did not "protect and present" Bogart's testimony, the "central evidence" of Ray's defense. A defendant, like Ray, who alleges that he received ineffective assistance of counsel must meet the 2–prong *Strickland* test to prevail on his claim. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh'g denied,* 467 U.S. 1267 (1984). He must show:

> First . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . .

*State v. Thomas,* 109 Wn.2d 222, 225–26, 743 P.2d 816 (1987) (quoting *Strickland,* at 687). If defense counsel's conduct can be characterized as legitimate trial strategy, it cannot serve as a basis for a claim of ineffective assistance of counsel. *State v. Mak,* 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). Failure to investigate or interview witnesses, or to properly inform the court of the substance of their testimony, is a recognized basis upon which a claim of ineffective assistance of counsel may rest. *State v. Visitacion,* 55 Wn. App. 166, 173–74, 776 P.2d 986 (1989); *Dorsey v. King Cy.,* 51 Wn. App. 664, 674–75, 754 P.2d 1255, *review denied,* 111 Wn.2d 1022 (1988); *State v. Byrd,* 30 Wn. App. 794, 799–800, 638 P.2d 601 (1981); *State v. Jury,* 19 Wn. App. 256, 264, 576 P.2d 1302, *review*

*denied,* 90 Wn.2d 1006 (1978). Because we conclude that a formal offer of proof was not required to preserve Bogart's testimony and that, if it were, the affidavit counsel submitted was timely, we also conclude that Ray received effective assistance of counsel.

## Prosecutorial Misconduct

Ray contends that the prosecutor made improper inquiries of Miller on cross examination; the prosecutor improperly referred during Ray's cross examination to a no–contact order that the court entered in this case and improperly asked Ray if "[D.] was removed from [Ray's] home for sex[ual] abuse"; and that the prosecutor improperly characterized the evidence during closing argument. Report of Proceedings, at 153 (Sept. 8, 1987). In reviewing alleged prosecutorial misconduct, this court asks whether "the remark[s] when viewed against the backdrop of all the evidence[,] so tainted the entire proceeding that the accused did not have a fair trial." *State v. Weber,* 99 Wn.2d 158, 164, 659 P.2d 1102 (1983). We consider whether the irregularity could have been cured by instructing the jury to disregard the remark. 99 Wn.2d at 165. The decision to deny a request for mistrial based upon alleged prosecutorial misconduct lies within the sound discretion of the trial court, and it will not be disturbed absent an abuse of discretion. *State v. Hopson,* 113 Wn.2d 273, 284, 778 P.2d 1014 (1989).

After reviewing all the evidence, it is clear that the prosecutor did not inquire improperly of Miller and that the prosecutor's reference to the no–contact order was not so serious an irregularity that it materially affected the fairness of Ray's trial. Similarly, Ray's contention that the prosecutor mischaracterized the evidence during his closing argument is without merit: the prosecutor's statements, taken in context, are only inferences from the evidence, which the prosecutor wished the jury to accept. *See State v. Swan,* 114 Wn.2d 613, 664–65, 790 P.2d 610 (1990).

Ray's allegation that the prosecutor improperly asked if D. was removed from Ray's home "for sex[ual] abuse" has merit. The prosecutor has a duty not to use statements that are not supported by the record and that may tend to prejudice the defendant. *State v. Grover,* 55 Wn. App. 923, 936, 780 P.2d 901 (1989), *review denied,* 114 Wn.2d 1008 (1990). The trial court, when it sustained Ray's objection, recognized that the question was improper. After it sustained Ray's objection, however, the trial court also promptly instructed the jury to disregard the question. Report of Proceedings, at 153. In these circumstances, the prosecutor's question, although improper, did not "so [taint] the entire proceeding" that it denied Ray a fair trial and warranted the declaration of a mistrial. *State v. Hopson,* 113 Wn.2d at 284. We strongly recommend that the prosecutor refrain from such questions on retrial.

## Insufficient Evidence Supports Conviction for Incest

Finally, Ray contends that substantial evidence did not support his conviction for incest, emphasizing the discrepancies in the testimony of D. and Miller. The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 220–21, 616 P.2d 628 (1980). Again, however, because we reverse Ray's conviction on other grounds, we will not address this challenge to the sufficiency of the evidence.

## Conclusion

1. Suppression is not a proper remedy for violating CrR 4.7 and the trial court erred when it suppressed Bogart's testimony.

2. A formal offer of proof concerning Bogart's testimony was not required in this case because the substance of the testimony was apparent from the context within which the parties discussed the evidence in open court.

3. An affidavit submitted with a motion for new trial is a timely offer of proof for purposes of preserving error on appeal.

4. Theft is, per se, a crime of dishonesty and is automatically admissible under ER 609(a)(2). The trial court erred when it excluded evidence of D.'s conviction. We reverse this ruling.

5. Evidentiary rulings under ER 609 are not of constitutional dimension, and are reviewed under a nonconstitutional error standard.

6. The trial court properly admitted evidence of prior sexual contact between D. and Ray.

7. Ray's allegations that he received ineffective assistance of counsel and of prosecutorial misconduct are incorrect.

We reverse and remand to the trial court.

BRACHTENBACH, ANDERSEN, DURHAM, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

DOLLIVER, J. (concurring in part, dissenting in part)—I agree the testimony of Ray's defense witness, Bogart, was erroneously suppressed. However, there are several reasons why this court should not hold theft offenses are admissible per se under ER 609(a)(2) and, therefore, I dissent as to that issue.

The majority announces that it "take[s] this opportunity to overrule [*State v.*] *Burton*, [101 Wn.2d 1, 676 P.2d 975 (1984)] and to clarify the confusion engendered by the plurality opinion in *State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989)." Majority, at 544. It then proceeds, with no new justification or analysis, to adopt what was formerly the minority opinion in Washington and to overrule years of Washington case law. All this the majority does as a volunteer, as its holding regarding ER 609(a)(2) is not necessary to the result in this case.

The question whether theft crimes are crimes of dishonesty for purposes of ER 609(a)(2) is not new. As far as the law of this state is concerned, however, the majority's

answer is new. It constitutes a marked and, I believe, unnecessary and unwise change from previous Washington law.

The court first considered the issue of whether theft is a "crime of dishonesty" for purposes of ER 609(a)(2) in *State v. Burton*, 101 Wn.2d 1, 676 P.2d 975 (1984), at which time we *explicitly rejected* the Court of Appeals' statement "'[t]o steal is dishonest. We need not trace federal legislative history to construe "dishonesty".'" *Burton*, at 6 (quoting *State v. Burton*, 33 Wn. App. 417, 420, 655 P.2d 259 (1982), *rev'd*, 101 Wn.2d 1, 676 P.2d 975 (1984)). Instead, the court held:

> [T]he Court of Appeals overly broad definition of the word "dishonesty" . . . is inconsistent . . . with our intent in adopting ER 609(a)(2) and with the vast majority of federal case law interpreting Fed. R. Evid. 609(a)(2) . . . [W]e find the word "dishonesty" must be defined in the context of the rule. . . . [W]e find that it is proper to look to the legislative history surrounding the adoption of the federal rule as well as the federal case law developed since its adoption to define the category of crimes included under ER 609(a)(2).

*Burton*, at 6. The court considered federal legislative history when ER 609(a)(2) was adopted, and it should continue to do so today. That legislative history makes it clear that "dishonesty or false statement" was meant to connote only "crimen falsi", rather than the wider range of all crimes which are technically dishonest (*see Burton*, at 6–7). Although unguided intuition might support a broad reading of "dishonesty", the majority of federal courts still interpret the rule as excluding crimes of theft. *See* 3 D. Louisell & C. Mueller, *Federal Evidence* § 317, at 337–38 (1979), 208–10 (Supp. 1990).

The concept that crimen falsi differ qualitatively from other crimes is not new. As noted in *Burton*:

> At common law, the term "crimen falsi" referred to "crimes of infamy". *State v. Payne*, 6 Wash. 563, 34 P. 317 (1893).
> [P]ersons are rendered infamous . . . by having been convicted of forgery, perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the

absence of a witness, or other conspiracy, to accuse one of a crime, and barratry. . . . [T]he "crimen falsi" of the Common Law . . . is one which may injuriously affect the administration of justice, by the introduction of falsehood and fraud.
. . . 2 J. Wigmore, *Evidence* § 520, at 730 (rev. 1979). *Accord,* Black's Law Dictionary 446–47 (4th rev. ed. 1968).

*Burton,* at 7. The distinction between a tendency toward testimonial dishonesty and simple lack of respect for the property of others is crucial, because

[t]he purpose of allowing impeachment by prior conviction evidence is to shed light on the defendant's *credibility* as a witness. Therefore, prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth. Simply because a defendant has committed a crime in the past does not mean the defendant will lie when testifying.

(Citations omitted.) *Burton,* at 7–8. *Accord,* R. Aronson, *Evidence in Washington* 609–10 (1989). At that time we concluded that "[w]hile in a broad sense theft is always dishonest, crimes of theft in general do not contain the requisite element of untruthfulness and thus, misdemeanor crimes of theft in general are inadmissible under ER 609(a)(2) . . .". *Burton,* at 10. To hold, as the majority now does, that all crimes with any element of premeditation are "crimes of dishonesty" for purposes of ER 609(a)(2) is to distort the intent of the rule.

This very issue was addressed in the proposed changes to the Federal Rules of Evidence published by the American Bar Association, Criminal Justice Section Committee on Rules of Criminal Procedure and Evidence in 1987. The committee proposed changing rule 609(a)(2) so evidence that a witness has been convicted of a crime shall be admitted only if the crime

involved ~~dishonesty or false statement,~~ *UNTRUTHFUL-NESS OR FALSIFICATION,* regardless of the punishment, UNLESS THE COURT DETERMINES THAT THE PROBATIVE VALUE OF ADMITTING THIS EVIDENCE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE. THIS SUBSECTION (2) APPLIES

ONLY TO THOSE CRIMES WHOSE STATUTORY ELE-
MENTS NECESSARILY INVOLVE UNTRUTHFULNESS
OR FALSIFICATION.

(Italics mine.) American Bar Ass'n, *Federal Rules of Evidence: A Fresh Review and Evaluation,* 120 F.R.D. 299, 356 (1987). The commentary accompanying the proposed rule states, in relevant part:

> Proposed section (a)(2) both clarifies and changes the existing Rule. The current wording of (a)(2) refers to crimes of dishonesty or false statement. Endless dispute has resulted from the inclusion of "dishonesty" in the Rule. Some courts have used this provision to include crimes of stealth such as larceny, robbery, burglary or even on occasion narcotics violations. . . .
>
> Proposed Rule 609(a)(2) applies only to convictions for untruthfulness or falsification. *This change more accurately implements the intention of present Rule 609.* . . .

(Citations omitted. Italics mine.) 120 F.R.D. at 359–60. These proposed changes would make the federal rule identical to the *Burton* rule, except that even more protection would be added in the form of a balancing test. The proposed rules are admittedly preliminary, and have only persuasive value. Nonetheless, they do offer a well reasoned interpretation of what rule 609(a)(2) was intended to achieve.

In *State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989), Justice Brachtenbach, writing for a plurality of four, stated that "our heavy reliance in *Burton* upon federal legislative history and upon federal decisional law was misguided." *Brown,* at 547. After quoting a definition of dishonesty from Webster's dictionary, the plurality in that case opined:

> The act of taking property is positively dishonest. . . . We perceive no reason to believe that a person's propensity to lie may be demonstrated by past acts of lying but not by past acts of dishonest conduct.

*Brown,* at 552.

The foregoing analysis did not persuade a majority of the

*Brown* court; indeed, it was explicitly rejected by five justices in concurring opinions. As Justice Utter put it,

this new construction of ER 609 is not based on the reports of those who drafted it but on passages from Webster's dictionary and the intuition of Justice Brachtenbach's opinion. By so doing, the opinion by Justice Brachtenbach would make no distinction—for the credibility-driven purposes of ER 609(a)(2)—between the person who steals a loaf of bread and the one who swindles his victims out of their savings. Further, by allowing the admission of crimes such as robbery, burglary, theft, and perhaps kidnapping under the per se standard of ER 609(a)(2), the opinion by Justice Brachtenbach effectively emasculates the balancing test in 609(a)(1).

*Brown,* at 558–59 (Utter, J., concurring). It is incomprehensible to me how a per se rule that a past conviction for petty theft is admissible *regardless of its prejudicial effect* (while a past conviction for murder is only admissible if it survives a balancing test) can be reconciled with the purposes of ER 609 and the evidence rules in general. One federal court has stated the issue thus: "[P]recisely because it involves no discretion on the part of the trial court, . . . Rule 609(a)(2) must be confined . . . to a 'narrow subset of crimes'". *United States v. Fearwell,* 595 F.2d 771, 777 (D.C. Cir. 1978).

In the latest supplement to his handbook on Washington evidence law, Professor Aronson discussed the implications of the plurality opinion in *State v. Brown,* 111 Wn.2d 124, 761 P.2d 588 (1988) (*Brown* I). (Although five justices in *Brown* I concurred in the result only, there were no concurring opinions published at that time. After rehearing was granted—and after Aronson's latest supplement was written—concurrences were published making explicit the fact that Justice Brachtenbach's opinion did not change Washington law on this point. The majority opinion was not substantially altered.) Professor Aronson stated that the rule in *Brown* I, the same rule now proposed by the majority, would make Washington's law "the most inclusive, least discretionary admissibility rule of any jurisdiction that has adopted Rule 609(a) or its equivalent." R. Aronson, at 609–10.

Washington had a lenient admissibility rule prior to the adoption of ER 609(a)(2). In adopting the rule, this court explicitly chose to impose more restrictions on admissibility. *See* Comment, ER 609, 91 Wn.2d 1150 (1979). It is inappropriate for the court now unilaterally to alter ER 609(a)(2) by "interpreting" it so it becomes virtually meaningless. The court ought to use extreme caution in giving different meanings to its rules depending on the majorities which rise and fall with each case. Any change in the interpretation of the rule ought to be subject to the formal rules process adopted by the court, GR 9, rather than ad hoc procedure adopted by the majority. This is particularly true in this case where the issue of admissibility under ER 609(a)(2) is not determinative. I believe the integrity of this court's rulemaking authority as well as its obligation to the bar and litigants is better served by a reconsideration of ER 609(a)(2) under the established procedures.

The majority in the instant case adds no analysis to that rejected by this court in *Brown*. The majority's holding regarding theft is wrong both from a statutory and from a policy standpoint and because it undermines the rulemaking procedures adopted by the court. Therefore, I dissent.

UTTER and SMITH, JJ., concur with DOLLIVER, J.