[No. 28234-4-I.    Division One.    July 12, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MORRIS O'DELL, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Johnson, Deputy,* for respondent.

FORREST, J. — Morris O'Dell appeals his conviction of one count each of robbery in the first degree and assault in the second degree, contending: (1) evidence of his 1973 grand larceny conviction should not have been admitted pursuant to ER 609; (2) a pretrial photographic identification was tainted and should have been excluded; (3) the subsequent in-court identification was tainted and should have been suppressed; and (4) his offender score incorrectly included the 1973 conviction. In O'Dell's pro se supplemental brief, he asserts the sum of several trial court errors deprived him of a fair trial. We affirm.

Richard Goodwin, Mary Moe and Charles Baughn were all asleep in the early morning hours of October 2, 1990, in a mobile home in the north end of Seattle. Goodwin and Moe had fallen asleep with the television on in their bedroom in the rear of the trailer. Baughn had fallen asleep in the living room in the front of the trailer with the television and a lamp on. Baughn was awakened by a knock on the front door sometime between 3 and 5 a.m. He turned on the outside porch light to see who it was, peered through the side window, and then opened the door after the two people outside identified themselves as police officers. One of the two

wore what appeared to be a Seattle Police Department uniform, the other was dressed in plain clothes.

The two men told Baughn they were investigating a theft, and asked Baughn where "the stuff" and money was. After Baughn asked to use the telephone, both men pointed guns at him. When Goodwin got up to investigate the noise, the person dressed as a police officer, later identified as Morris O'Dell, pointed his gun at Goodwin, told him to go back to the bedroom, and followed him.

The second burglar[1] tied Baughn's hands behind his back and forced him to lie facedown on the couch. The second burglar held Baughn at gunpoint while O'Dell followed Goodwin into the rear of the trailer.

In the bedroom, Moe was awake and sitting up in bed when Goodwin came into the room at gunpoint. In the light of the television (and perhaps a small bedside light), Moe watched as O'Dell handcuffed Goodwin. In the process, the gun O'Dell was holding discharged, and the bullet went through Goodwin's side. When Moe demanded to know what was going on, O'Dell told her to shut up, and ripped the telephone cord out of the wall when Moe reached for the telephone. O'Dell took $600 in cash from the pocket of Goodwin's trousers as he left the bedroom, and then fled with his accomplice.

Goodwin, Moe and Baughn did not report the incident to the police until about 9:30 a.m. At that time, they gave a detailed description of the burglar who shot Goodwin, and a general description of his accomplice, to the police.

Two weeks later, on October 17, Seattle Police Detectives Nordlund and Ramirez contacted Goodwin, Moe and Baughn at the trailer during a murder investigation. The detectives had been told that a suspect in the murder investigation, identified as Morris O'Dell, had robbed Goodwin's trailer. The victims gave the same description to the detectives as had been given to the police, and additionally commented

---

[1] The second burglar was not identified.

that the burglar who was dressed as a police officer looked like actor Sam Elliott.

The detectives told the victims they had a photograph of O'Dell with them, but refused to show them until they had other photos with which to compare it. After collecting five other similar photos from a precinct station, the detectives returned to Goodwin's trailer several hours later. Goodwin, Moe and Baughn were separately shown the stack of six photos, and each immediately identified O'Dell's photo as the burglar dressed as a police officer.

On October 25, a search warrant was executed on O'Dell's house and car. The search revealed theatrical makeup, syringes, and a facsimile law enforcement badge in the house. In the trunk of O'Dell's car, officers found a wig, fake beard, temporary cast and arm sling, narcotics paraphernalia, a blue shirt and a metal facsimile police badge.

Morris O'Dell was charged by information with one count of robbery in the first degree, and one count of assault in the second degree, with a special deadly weapon allegation added to each charge. The original trial date was set for January 23, to expire January 25, 1991.

O'Dell's trial date was continued six times between January 25 and February 11, 1991, because of unavailability of counsel.

On February 12, the trial judge heard a number of pretrial motions, and made the following rulings:

1. O'Dell's motion to dismiss for violation of his right to a speedy trial was denied.

2. O'Dell's motion to compel discovery of the murder investigation police report was granted in part, after an *in camera* review and excision.

3. O'Dell's motion for expert witness funds to allow Professor Elizabeth Loftus to testify about eyewitness identifications was denied.

4. O'Dell's motion to suppress pretrial and in-court identification by Goodwin, Moe and Baughn was denied. The court heard testimony from all three complainants as

well as one of the police detectives responsible for the photo identification procedure at Goodwin's trailer.

During trial, the State's motion to allow impeachment of O'Dell pursuant to ER 609 was granted, with the proviso that O'Dell's 1973 grand larceny conviction and 1980 second degree robbery conviction be referred to as unnamed felonies.

The jury convicted O'Dell on both counts, and responded affirmatively to the special deadly weapon verdicts. On March 29, 1991, O'Dell was sentenced to 90 months' and 40 months' confinement for the robbery and assault charges, respectively, to be served concurrently. The sentence is based on O'Dell's two prior convictions, and is within the standard range.

From this judgment and sentence O'Dell appeals.

## ER 609

O'Dell contends that his 1973 conviction for grand larceny was improperly admitted to impeach his credibility pursuant to ER 609. The basis for his objection is that more than 10 years have elapsed since he was originally released from confinement pursuant to the conviction.[2] It is undisputed that O'Dell was first released from custody pursuant to the 1973 conviction more than 10 years prior to the current trial, that he was reconfined pursuant to parole violations, and that the latest release from such reconfinement was within 10 years of his current offense. Accordingly, it is a pure issue of law as to whether the 10-year period starts with his last release or his first release.

■■ The applicable portion of ER 609(b) provides that even if admissible under ER 609(a), evidence of a witness's prior felony

is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness

---

[2]The conviction satisfies the other requirements for admission. Grand larceny is a felony. Larcenies are thefts, RCW 9A.56.100, and thefts are per se admissible. ER 609(a); *State v. Ray*, 116 Wn.2d 531, 545, 806 P.2d 1220 (1991). The *Ray* holding may be applied retroactively. *State v. Eisenman*, 62 Wn. App. 640, 643, 810 P.2d 55, 817 P.2d 867 (1991). Hence, O'Dell's grand larceny conviction was per se admissible if it satisfies the time limitation.

from the confinement imposed for that conviction, whichever is the later date . . ..

ER 609(b). The parties agree that no Washington case has addressed this precise issue. Court rules are interpreted in the same manner as statutes.[3] When the language is clear, interpretation is not appropriate.[4] We find the language of the rule clear and not requiring interpretation. The confinement is imposed for the original conviction; indeed, absent that conviction there would be no basis for the confinement for the parole violation.[5]

■ O'Dell relies on one federal case making a different interpretation of the equivalent federal rule. *United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988). Although the federal interpretation of an equivalent federal rule is persuasive, it is not binding.[6] Wallace had his parole for the original conviction revoked because of a subsequent perjury conviction; the court held because the perjury conviction was not

> substantively related or parallel to the original heroin conviction, we conclude that the revocation of Wallace's parole based on the perjury charge does not constitute confinement for the original heroin conviction tolling the ten-year limit of Rule 609(b).

*United States v. Wallace*, at 1472-73. The *Wallace* court did not base its result on interpretation of the language of the rule, but rather relied on general policy concerns as to the fairness of prior convictions as a basis for impeachment.

We do not find that the interpretation comports with the general standards of statutory interpretation. Unless there

---

[3]*State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993).

[4]*State v. Hutchinson*, 111 Wn.2d 872, 877, 766 P.2d 447 (1989).

[5]"While no case addressing this issue has been cited by either side, and the Court has found none, the Court is of the opinion that reconfinement pursuant to parole violation is 'confinement imposed for [the original] conviction,' and therefore the release date from that second confinement is the one used in computing time under Rule 609(b)." *United States v. Brewer*, 451 F. Supp. 50, 52-53 (E.D. Tenn. 1978); *but see United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988).

[6]*Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

is ambiguity, interpretation is inappropriate.[7] Furthermore, such a rule would be difficult to apply in practice. Every time the issue arose it would be necessary to get a transcript of the hearing before either the parole board or the court to find out the exact basis of the revocation. Even then there would be some difficulty in deciding whether the violation meets the test of whether it was "substantively related or parallel to" the original conviction. A bright line test for admissibility is desirable to expedite trials and reduce the chance for error. If, as the *Wallace* court seems to think, applying a bright line rule that the 10-year period starts from the date of a release from confinement pursuant to parole revocation produces undesirable results, the remedy is to change ER 609(b) to specifically address the problem, rather than by a strained interpretation of the present language.[8] We do not find the *Wallace* holding persuasive with respect to construction of ER 609, and we find the process of implementation would be impractical and undesirable. Accordingly, we decline to adopt the *Wallace* holding.

Language very similar to that with which we are concerned in ER 609 appears in RCW 9.94A.360,[9] the washout provision for prior convictions. The section excludes prior felony convictions "if since the last date of release from confinement" 10 years have elapsed without another felony conviction. In *State v. Blair*, 57 Wn. App. 512, 789 P.2d 104

---

[7]*State v. Hutchinson*, 111 Wn.2d at 877.

[8]The rather unedifying history of the meaning of "crime of dishonesty" in Washington Supreme Court cautions against trying to resolve policy differences as to the use of convictions from impeachment through "interpretation" of the rule. *Compare State v. Burton*, 101 Wn.2d 1, 7, 676 P.2d 975 (1984) (holding crimes of theft do not bear directly on a defendant's honesty) *with State v. Ray*, 116 Wn.2d 531, 545, 806 P.2d 1220 (1991) (holding theft is a crime of dishonesty).

[9]"Class B prior felony convictions . . . shall not be included in the offender score, if *since the last date of release from confinement* (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without being convicted of any felonies." (Italics ours.) RCW 9.94A.360(2).

(1990), the defendant argued that the incarceration for a probation violation should not interrupt the washout period under RCW 9.94A.360(2). The court rejected this interpretation stating, "there is no reason to disassociate the probation confinement from its underlying cause, the felony conviction." *Blair*, at 515-16. As O'Dell points out, there are somewhat different policy considerations in deciding which prior felonies should be used to enhance punishment and which prior felonies are proper in evaluating credibility of a witness. Nonetheless, the similarities are sufficient to find *Blair* supportive of our conclusion.

■ We find ER 609(b) clear as written and hold that "the confinement imposed for that conviction" includes confinement for probation or parole violations based on that conviction. O'Dell's 1979 grand larceny conviction being per se admissible, the court did not err in admitting it.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WEBSTER, C.J., and AGID, J., concur.