# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>LARRY JOHN LEE,<br><br>                    Petitioner. | No.  52170-9-II<br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — In this timely personal restraint petition (PRP), Larry John Lee seeks relief from personal restraint imposed as a result of his 2016 conviction for the second degree felony murder of Phillip George Carter with the predicate offense of second degree criminal mistreatment.[1]  Lee argues that (1) defense counsel's representation was ineffective on several grounds, (2) he has newly discovered evidence that was not presented at trial, (3) the charges were politically motivated and the State initially requested excessive bail, (4) the State engaged in prosecutorial misconduct on several grounds, (5) his speedy trial rights were violated, (6) the State failed to prove the alleged motive, (7) the trial court wrongfully denied his release on bond pending appeal, (8) his sentence was excessive, and (9) the State did not present sufficient evidence that he

---

[1] Carter passed away on May 15, 2015.

committed second degree felony murder. In a supplemental brief in support of his petition, Lee also raises a freestanding actual innocence claim. Because none of these arguments have merit, we deny this petition and deny Lee's request for appointment of counsel.

Unless otherwise indicated, the facts of this case are described in Lee's direct appeal, *State v. Lee*, No. 49158-3-II, (Wash. Ct. App. Nov. 14, 2017) (unpublished), http://courts.wa.gov /opinions/pdf/D2%2049158-3-II%20Unpublished%20Opinion.pdf, *review denied*, 190 Wn.2d 1012 (2018).

## I. PRP STANDARDS

To be entitled to relief in a PRP, the petitioner must establish either a constitutional error that resulted in actual and substantial prejudice or a nonconstitutional error that amounts to "a fundamental defect resulting in a complete miscarriage of justice." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013); *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (plurality opinion).

The petitioner must state with particularity the factual allegations underlying his or her claim of unlawful restraint. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are not sufficient. *Id.* at 886.

The petitioner must also provide evidentiary support for his or her allegations. *Id*. If the trial court record does not support the factual allegations, then the petitioner must show through affidavits or other forms of corroboration that competent and admissible evidence will establish the factual allegations. *Id*. The petitioner may not rely on mere speculation, conjecture, or inadmissible hearsay. *Id*. A PRP cannot renew an issue that was raised and rejected on direct

appeal, unless the interests of justice require the issue's relitigation. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004).

If the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect, we deny the PRP. *Yates*, 177 Wn.2d at 17-18. If the petitioner makes such a showing, but the record is not sufficient to determine the merits, we remand for a reference hearing. *Id.* If, however, we are convinced the petitioner has proven actual and substantial prejudice or a fundamental defect, we grant the petition. *Id.*

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

Lee first argues that he was deprived of effective assistance of counsel on numerous grounds. Lee broadly alleges that defense counsel took this case intending to argue that Lee was not responsible for Carter's care because they had only a landlord/tenant relationship and that counsel focused only on this defense and failed to investigate or present defenses in response to the State's allegation that Lee neglected Carter. Specifically, Lee asserts that defense counsel failed (1) to call several witnesses, (2) to obtain a defense expert to testify about bedsores, (3) to elicit testimony from Carter's sister about Carter's medical history, (4) to call nonfamily character witnesses, (5) to challenge the State's evidence about the use of restraints, (6) to properly advise Lee about whether to testify, (7) to obtain Carter's medical records, (8) to adequately prepare witnesses for trial, (9) to properly object, (10) to present an adequate closing argument, and (11) to properly advise Lee about what to say at his sentencing hearing. Lee also argues that defense counsel essentially abandoned the case when he learned that the charges were politically motivated. These arguments fail.

A. INEFFECTIVE ASSISTANCE OF COUNSEL LEGAL PRINCIPLES

To establish ineffective assistance of counsel, Lee must demonstrate that defense counsel's performance fell below an objective standard of reasonableness and that, as a result of that deficient performance, the result of his case probably would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We presume strongly that defense counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). If defense counsel's conduct can be characterized as a legitimate trial strategy, it cannot serve as a basis for an ineffective assistance of counsel claim. *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

B. FAILURE TO CALL WITNESSES

Lee first argues that defense counsel performed deficiently by failing to present evidence from or subpoena Lee's ex-wife Cheryl Lee, a witness from the State, Carter's doctor, and someone from Carter's pharmacy. We disagree.

1. APPLICABLE STANDARDS

Counsel is not required to interview or call every conceivable witness. *Davis*, 152 Wn.2d at 739. "Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics." *Id.* at 742. Lee may overcome this presumption "by showing counsel failed to conduct appropriate investigations to

determine what defenses were available, adequately prepare for trial, or subpoena necessary witnesses." *Id*.

To be entitled to relief based on a failure to investigate claim, Lee "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *Id.* at 739. Even if Lee is able to "show that exculpatory evidence unknown to trial counsel would have been uncovered by further investigation or interview," we consider this showing "'in light of the strength of the government's case.'" *Id*. (internal quotation marks omitted) (quoting *Rios v. Rocha*, 299 F.3d 796, 808-09 (9th Cir. 2002)).

2.    FAILURE TO SUBPOENA CHERYL LEE

Lee argues that defense counsel should have subpoenaed Cheryl.[2] Lee contends that Cheryl could have testified about their licensed adult family home, which was in business between 1992 and 2013; the fact that they had no history of abuse while running the home; that she had been responsible for Carter's care after she left the home until Lee failed his caregiver's license test; and that she had attempted to remove Carter from Lee's home when she left, but she returned Carter to Lee's home at Carter's request. Lee states that although Cheryl did not want to testify, she had sent defense counsel a letter in support of Lee and defense counsel still failed to subpoena her.

In support of this argument, Lee attaches a copy of an e-mail that purports to contain a letter that Cheryl sent to defense counsel. Even assuming that we can properly consider this letter,

---

[2] Because Lee and Cheryl Lee share the same last name, we refer to Cheryl by her first name to avoid confusion.

it demonstrates that defense counsel likely had legitimate, tactical reasons for not calling Cheryl as a witness.

In the letter, Cheryl states that although Lee assisted her with some general patient care when the adult family home was in operation, he did so at her request and that he "never much got into the gist of" running the business. PRP at 28. She also stated that although Lee "is a caring man," he "just made a lot of poor decisions that he didn't see." *Id.* at 29. And she commented that Carter "passed from neglect." *Id.*

These types of statements would not have been helpful to Lee's defense. Because the letter shows that there was a risk that Cheryl would provide damaging testimony, defense counsel's conduct can be characterized as a legitimate trial strategy and cannot serve as a basis for an ineffective assistance of counsel claim. *Ray*, 116 Wn.2d at 548. Accordingly, Lee fails to show that defense counsel's failure to subpoena Cheryl as a witness constituted deficient performance.

3. FAILURE TO SUBPOENA A "WITNESS FROM THE STATE"

Lee next argues that defense counsel performed deficiently by failing to subpoena a witness from the State to explain why the State did not check on Carter after Lee failed to obtain his caregiver's license and the State stopped paying for Carter's care. Lee also appears to suggest that the State could have told counsel about Carter's prior "blood disease," apparently referring to a prior bout of septicemia. PRP at 20.

Lee has not directed us to anything in the record supporting his claim that a State's witness could have provided any exculpatory evidence or that the State had any information regarding Carter's prior infection or infections. And he does not provide any kind of support for his assertion that the State might have been able to provide information that would have been helpful at trial in

6

any way. Accordingly, Lee fails to show that defense counsel's failure to subpoena a witness from the State constituted deficient performance. *See Rice*, 118 Wn.2d at 886 (petitioner must show through affidavits or other forms of corroboration that competent and admissible evidence will establish the factual allegations and may not rely on mere speculation or conjecture).

4.      FAILURE TO SUBPOENA CARTER'S DOCTOR

Lee further argues that defense counsel should have subpoenaed Carter's doctor to testify about Carter's long-term health issues, the fact that Carter cancelled his appointments several times, and Carter's refusal to seek medical assistance regardless of his medical needs.[3] But Lee provides no evidentiary support establishing that the doctor would have been able to provide such information or that the information the doctor had would have been helpful to Lee's case. That the doctor could have provided helpful testimony or other evidence is pure speculation. *See id*.

Furthermore, Lee's failure to ensure that Carter attended his medical appointments could have bolstered the State's argument that Lee failed to provide adequate care, and it could have been a legitimate tactical decision to not present such evidence. Accordingly, Lee fails to show that defense counsel's failure to subpoena Carter's doctor as a witness constituted deficient performance.

---

[3] In Lee's direct appeal, we addressed whether defense counsel's performance was deficient for failing to investigate and interview Carter's primary care physician. *Lee*, No. 49158-3-II, slip op. at 12. Lee argued that the doctor would have testified that Carter had cancelled a doctor's appointment two weeks before he died. *Id*. Here, Lee's argument is broader than the issue we addressed on the merits in the direct appeal because he now argues that the doctor could have testified about Carter's medical history, the fact that Carter cancelled *several* appointments, and the fact that Carter had refused to go to the doctor regardless of his medical needs. Accordingly, we do not agree with the State's assertion that the issue raised in this petition has already been addressed on the merits.

5.      FAILURE TO SUBPOENA SOMEONE FROM CARTER'S PHARMACY

Lee next argues that defense counsel was ineffective for failing to subpoena someone from Carter's pharmacy. He argues that the pharmacy would have records demonstrating that he tried to fill Carter's prescriptions but was unable to because the pharmacy required Carter to see his doctor first.

Again, Lee fails to present anything beyond his bare allegations that the pharmacy would have records that would have assisted in his defense. *See id.* Furthermore, at best, Lee suggests that a witness from the pharmacy could have testified that it had refused to refill Carter's prescriptions unless he saw his doctor. But that information could have also been harmful to Lee's defense because it could demonstrate that Lee failed to obtain necessary medical care, and it could have been a legitimate tactical decision to not present such evidence. Accordingly, Lee fails to show that defense counsel's failure to subpoena someone from Carter's pharmacy as a witness constituted deficient performance.

C. FAILURE TO OBTAIN AN EXPERT WITNESS

Lee further argues that defense counsel performed deficiently by failing to obtain a defense expert witness to testify about bedsores. Lee contends that a defense expert could have challenged the State's witness's testimony about Carter's bedsores.

Lee does not provide us with an affidavit or statement from any potential expert witness. Thus, it is pure speculation that defense counsel could have found an expert witness who could have provided evidence helpful to the defense. Without knowing what such a witness would have been able to testify to, Lee cannot establish that any failure on defense counsel's part in seeking

such a witness was prejudicial. Accordingly, Lee fails to establish ineffective assistance of counsel on this ground. *See id.*

D. FAILURE TO ADEQUATELY QUESTION CARTER'S SISTER

Lee next argues that defense counsel performed deficiently by failing to question Carter's sister, Judy Barber,[4] about Carter's medical history when Barber testified at trial. Lee asserts that defense counsel should have questioned Barber "about [Carter's] blood disease, which could prove my innocence of Prosecution's claim that I caused his demise." PRP at 21.

But Barber's affidavit does not mention a prior infection or a history of hiding sores. Although Lee also provides affidavits from his family members stating that Barber had approached them after the trial and told them about Carter's prior infection and injuries and that Barber stated she had told defense counsel about this earlier, the relevant portions of these affidavits are hearsay,[5] so they are inadequate to support Lee's claim. *Rice*, 118 Wn.2d at 886. Because Lee does not adequately support this argument, this ineffective assistance of counsel claim fails. *See id.*

Lee also suggests that defense counsel performed deficiently by failing to question Barber about Carter's resistance to seeking medical assistance and not disclosing physical problems. But at trial, the State questioned Barber about Carter's aversion to going to the doctor, and she testified that Carter did not like going to the doctor. Additionally, on cross-examination, Lee's defense

---

[4] In his PRP, Lee refers to Carter's sister as Judy Carter, but the record and her affidavit show that her name is Judy Barber.

[5] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Because Lee is attempting to introduce statements purportedly made by Barber through his family members, the information provided by Barber to Lee's family members is hearsay.

counsel questioned Barber about whether Carter would complain about physical issues, and Barber testified that Carter would not complain. Because Barber testified about Carter's failure to disclose physical problems and resistance to seeking medical assistance, this evidence was presented at trial and Lee cannot show prejudice. Accordingly, this ineffective assistance of counsel claim fails.

E. FAILURE TO CALL NONFAMILY CREDIBILITY WITNESSES

Lee next argues that defense counsel performed deficiently because he failed to call any witnesses other than Lee's mother and sister to testify about his character. In support of this argument, Lee presents e-mail copies of unsigned statements from family friend Julie Josephson and Lee's aunt, Darlene J. Smith. Neither of these statements can be considered.

Josephson's statement is a copy of an unsigned statement sent from Lee's mother's e-mail address to an unidentified e-mail address. And Smith's statement is an unsigned statement for Smith to sign sent from Lee's trial attorney's office to Lee's mother's e-mail. Because Lee does not properly support this argument, he does not establish that he is entitled to relief on this ground. *See id*.

F. FAILURE TO CHALLENGE EVIDENCE OF USE OF RESTRAINTS

Lee further argues that his counsel performed deficiently because counsel failed to challenge the State's evidence concerning the use of restraints. The record does not support this argument.

At trial, defense counsel questioned Lee's daughter about the use of restraints in the home. Defense counsel also questioned the medical examiner about the marks on Carter's body, and the medical examiner testified that the marks were consistent with the use of disposable diapers. And in closing argument, defense counsel highlighted the medical examiner's testimony that

contradicted wound care nurse Melanie Burnam's testimony that the marks on Carter's body were caused by restraints. Thus, the record shows that defense counsel in fact challenged the State's evidence related to the use of restraints.

Lee suggests that there may have been additional evidence, such as the fact a search of the home did not find any restraints that defense counsel did not present. But Lee does not present any support demonstrating that such evidence exists beyond his bare allegation.

Because the record shows that defense counsel challenged the State's evidence about restraints and Lee does not demonstrate that other evidence on this issue was available to defense counsel, this ineffective assistance of counsel claim fails.[6]

## G. FAILURE TO PROPERLY ADVISE LEE ABOUT TESTIFYING

Lee argues that his counsel performed deficiently by advising him not to testify and to rely on his mother's and daughter's testimonies. Lee asserts that defense counsel advised him not to testify because the State would "try to discredit [his] testimony" and that his decision not to testify "backfired because the prosecution made every effort to insinuate that [his] mother and daughter[']s testimony was not believable."[7] PRP at 21.

---

[6] To the extent Lee may be raising new claims in his reply related to the restraint evidence, we do not address claims raised for the first time in a responsive pleading. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (issue raised for the first time in a reply is raised too late to warrant consideration).

[7] Lee may be referring to the State's closing argument in which it challenged Lee's mother's credibility as to her testimony that she saw Carter on the day he died, and he appeared to be fine, and she did not smell anything. Defense counsel later challenged that part of the State's argument in a motion for new trial, arguing that there was nothing in the record showing that Lee's mother had seen Carter on the day he died and that she had testified only that she had seen him five days earlier. Although Lee's mother had testified on direct examination that she had seen Carter five days before his death, she also testified that she saw him the day he died and did not smell anything

11

A petitioner who can prove that his attorney actually prevented him from testifying against his wishes can demonstrate deficient performance, but that is not what Lee claims occurred here. *State v. Robinson*, 138 Wn.2d 753, 766-67, 982 P.2d 590 (1999). Lee essentially challenges the information defense counsel provided him when making his own decision about whether or not to testify. Lee merely contends that his decision "backfired" because the State attempted to discredit his mother's and sister's testimonies. PRP at 21.

On the final day of trial, defense counsel advised the trial court that Lee would probably testify. Defense counsel then presented testimony from Lee's mother and Lee's daughter. They were the only defense witnesses. Following this testimony, defense counsel rested without calling Lee to testify.

There is nothing in the record regarding when defense counsel spoke with Lee about whether to testify, and Lee does not state when this discussion occurred in relation to his mother's and sister's testimonies. But the record suggests that Lee made the decision to not testify after his mother and sister testified.

Defense counsel's advice was based on the information he had at the time, which did not include the State's closing argument, and was a reasonable evaluation of the evidence. Because defense counsel's conduct can be characterized as a legitimate trial strategy, it cannot serve as a basis for an ineffective assistance of counsel claim. *Ray*, 116 Wn.2d at 548.

Additionally, whether Lee's testimony would have resulted in a different outcome is purely speculative because Lee does not state what testimony he could have offered that would have been

---

"strange." 6 Verbatim Report of Proceedings (VRP) at 710. Thus, the State's argument was not improper.

more helpful to him than his family's testimony, and his credibility could be easily challenged since he was attempting to avoid conviction. Accordingly, this ineffective assistance of counsel claim fails.

## H. FAILURE TO OBTAIN CARTER'S MEDICAL RECORDS

Lee further argues that defense counsel failed to obtain Carter's medical records to show that Carter had previously had "this blood disease," likely referring to septicemia, and that if counsel had obtained these records, it would have explained why Carter deteriorated so quickly. PRP at 22. This argument also fails.

Lee does not present any evidence establishing that these past records exist or that any alleged past infection would have caused Carter to quickly deteriorate years later. Furthermore, Lee contends in his PRP that counsel had obtained Carter's medical records and that Carter was a very sick man, which undermines Lee's claims that defense counsel failed to obtain Carter's medical records. Accordingly, this ineffective assistance of counsel claim fails.

## I. FAILURE TO ADEQUATELY PREPARE WITNESSES FOR TRIAL

Lee contends that defense counsel performed deficiently by failing to adequately prepare the defense witnesses for trial. Lee asserts that defense counsel never talked to the defense witnesses about how to prepare for their testimony. But Lee provides no support for this argument. Accordingly, this ineffective assistance of counsel claim fails. *See Rice*, 118 Wn.2d at 886.

## J. FAILURE TO MAKE PROPER OBJECTIONS

Lee next contends that "[w]henever [defense counsel] did object on an issue, [the court] would agree and then the prosecution would argue and [the court] would begin looking things up

13

and then overrule." PRP at 22 (boldface omitted). Lee appears to argue that defense counsel performed deficiently by failing to make the correct objections.

But Lee does not identify what objections he is referring to, so we cannot adequately address this issue. Furthermore, what Lee appears to describe is the normal objection process, wherein one party objects and the other party has an opportunity to respond to that objection before the trial court rules. Accordingly, Lee is not entitled to relief on this ground.

## K. FAILURE TO PRESENT AN ADEQUATE CLOSING ARGUMENT

Lee appears to claim that defense counsel's closing argument was inadequate because counsel focused mainly on the lack of caretaking duty defense.

Our review of defense counsel's closing argument shows that Lee's defense counsel not only argued the lack of a caretaking duty, which was the primary defense theory, but that he addressed the State's other evidence. This argument was appropriate. Accordingly, this ineffective assistance of counsel claim fails.

## L. INADEQUATE SENTENCING ADVICE

Lee further argues that defense counsel performed deficiently by failing to properly advise him (Lee) before sentencing. Lee asserts that he was unaware of what to say to the court when he pleaded for leniency.

But Lee does not describe what advice defense counsel gave him. Nor does Lee include any other support for this claim, such as an affidavit from defense counsel describing their conversation. Because Lee has failed to adequately support this claim, he is not entitled to relief on this ground. *See Rice*, 118 Wn.2d at 886.

M.  ALLEGATION THAT DEFENSE COUNSEL ABANDONED THE CASE

Lee next asserts that defense counsel "gave up after he found out . . . this case was all political." PRP at 21 (boldface omitted).  Lee contends that once defense counsel determined that the case was politically motivated, counsel merely continued to pursue his original defense based on the lack of a caretaker relationship.

Lee does not support his assertion that defense counsel "gave up" and detrimentally focused only on his original defense. *Id.* (boldface omitted).  Furthermore, the record shows that although defense counsel pursued a defense based on a lack of caretaker relationship between Carter and Lee throughout the trial, counsel also challenged the State's evidence in closing argument and did not rely solely on the defense theory of the case.  Because Lee's allegation that defense counsel "gave up" and focused only on the original defense is not supported by anything other than Lee's bare allegation, this argument fails.  PRP at 21 (boldface omitted); *see Rice*, 118 Wn.2d at 886.

III.  NEWLY DISCOVERED EVIDENCE

Lee next claims to have newly discovered evidence of Carter's history of "blood disease," likely referring to a prior bout of septicemia, and of a pressure sore that Carter previously suffered while living at a different adult family home.  PRP at 39.  This argument also fails.

To obtain a new trial based on newly discovered evidence, Lee must show "'that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 319-

20, 868 P.2d 835, 870 P.2d 964 (1994) (emphasis omitted) (quoting *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)).

Lee fails to establish that he has newly discovered evidence. He admits that defense counsel had Carter's medical records, which would have documented Carter's alleged prior septicemia. Thus, to the extent Carter had a history of septicemia, that evidence was not discovered after the trial.[8]

Nor does Lee show that the evidence was material. He presents no support for his claim that a prior bout of septicemia or a prior pressure sore could have contributed to Carter's death. Accordingly, Lee does not meet the standard for newly discovered evidence and he is not entitled to relief on this ground.

## IV. POLITICALLY MOTIVATED PROSECUTION AND EXCESSIVE BAIL

Lee further argues that the second degree felony murder charge was politically motivated and was an attempt to "publicize and utilize" a $370,000 grant the State had received to address elder abuse. PRP at 46. In support of this argument, Lee presents a copy of an article about a grant received by Pierce County to address elder abuse, which shows that the prosecutor's office benefitted from this grant and was involved in the prosecution of such cases. But it is mere conjecture that the grant motivated the charges against Lee or that it influenced Lee's case in any way, so Lee has not established he is entitled to relief on this ground.

---

[8] Lee also asserts that Barber told counsel about this prior infection before trial. As noted above, Barber's affidavit does not contain this information and the information in Lee's family's affidavits are hearsay, so this factual assertion is unsupported.

Lee also appears to argue that the media attention given to the grant and his case was prejudicial. But again, it is mere conjecture that this media attention affected the outcome of his trial in any manner, so Lee has not established that he is entitled to relief on this ground.

In the same section of his PRP, Lee also mentions that the State initially requested excessive bail in the amount of a million dollars, apparently as a result of the emphasis on elder abuse engendered by the receipt of the grant. But Lee further notes that the trial court ordered only a $10,000 bail, and he does not argue that the $10,000 bail was excessive. Thus, Lee does not show how the State's initial high bail request prejudiced him. Accordingly, he is not entitled to relief on this ground.

## V. PROSECUTORIAL MISCONDUCT CLAIMS

Lee next argues that the State engaged in prosecutorial misconduct by (1) challenging witness credibility in closing argument based on Lee's relationship to the witnesses, (2) repeatedly showing the jury an outdated in-life photograph of Carter, (3) arguing that the evidence showed that Carter had been restrained, (4) presenting the pictures of Carter's bedsores in closing argument, (5) introducing additional photographs after the trial court had ruled that the State could present only 12 photographs, (6) influencing the jury's verdict by repeating the jury instructions to the jury during closing argument after the trial court had already instructed the jury, and (7) by "us[ing] the news media to promote [the prosecutor's] agenda." *Id*. These arguments fail.

### A. STANDARD OF REVIEW

To prevail on a prosecutorial misconduct argument, "the defendant must establish both improper conduct by the prosecutor and prejudicial effect." [*State v.*] *Pirtle*, 127 Wn.2d [628,] 672, 904 P.2d 245 [(1995)] (citing *State v. Furman*, 122 Wn.2d 440, 455, 858 P.2d 1092 (1993)). "Prejudice is established only if there is a substantial likelihood the instances of misconduct affected the jury's verdict." *Pirtle*, 127 Wn.2d at 672, 904 P.2d 245 (citing *State v. Evans*, 96 Wn.2d 1, 5, 633

17

P.2d 83 (1981)). In a PRP, the petitioner must show actual and substantial prejudice by a violation of his or her constitutional rights or by a fundamental error of law. [*In re Pers. Restraint of*] *Cook*, 114 Wn.2d [802,] 810, 792 P.2d 506 [(1990)]; *Lord*, 123 Wn.2d at 303, 868 P.2d 835.

*In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 481-82, 965 P.2d 593 (1998). But the petitioner

waives any error if he fails to object to the alleged misconduct "unless the prosecutor's misconduct

was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."

*State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

B. CHALLENGES TO WITNESS CREDIBILITY

Lee appears to argue that the State's argument that his mother's and daughter's testimonies

were less credible than the State's expert witness's testimony because they were family was

misconduct. He appears to challenge the following portion of the State's rebuttal argument, which

is the only part of the State's argument that challenged Lee's mother's and daughter's testimonies:

> I want to go back and remind you of the very first instruction that I pointed out. You are the sole judges of the credibility in this case, and you decide what weight to give to the testimony.
> The defense put on a case, and they don't have to. It's the State's burden beyond a reasonable doubt, but the defense did put on a case here, and [Lee's] mother testified. Well, we didn't find out it was his mother until I examined her on cross examination. [Lee's] mother testified and [Lee's] daughter testified. *You can decide how much weight to give to their testimony, what bias they may have in testifying here in this case.*
> Do you find it credible that [Lee's] mother, Marlene Calhoun, saw [Carter] on the day that he died and didn't notice anything was wrong? Is it credible that [Carter] would say on that day, on May 15th, that he was fine and dandy like sugar candy? Is it credible to believe that she didn't smell anything in those visits leading up to [Carter's] death? And she testified that she saw him that day. She saw him on May 15th. Didn't smell a thing.
> Dr. Lien, Melanie Burnam, the wound care nurse, the detectives who went into the residence, they could smell the odor. They could smell the odor when they came into direct contact with [Carter]. Judy Barber testified about it, the overwhelming smell of decaying and dead flesh. You decide what credibility and weight to give that testimony of [Lee's] witnesses.

18

The detectives talked about when they executed the search warrant at [Lee's] residence, that they could still smell that smell.

6 Verbatim Report of Proceedings (VRP) at 774-75 (emphasis added).

Lee's defense counsel did not object to this argument. But even assuming that this issue was preserved, this prosecutorial misconduct claim fails.

The State's rebuttal argument was not improper. The State merely asked the jurors to make a credibility determination. And because a family relationship to the defendant is relevant to a witness's personal interest in the outcome of the case or the witness's bias or prejudice and potentially affects a witness's credibility, this kind of argument was proper. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 at 21 (4th ed. 2016) (instructing the jurors that when considering a witness's testimony, they may consider the witness's personal interest in the outcome of the case and any bias or prejudice shown by the witness). Because this argument was not improper, this prosecutorial misconduct claim fails.

C. IN-LIFE PHOTOGRAPH OF CARTER

Lee next appears to argue that the State committed misconduct by repeatedly presenting a 15-year-old photograph of Carter to the jury because the photograph was taken before Carter's health declined.[9] This argument fails.

---

[9] The State argues that this issue was raised and addressed on direct appeal. The issue in the direct appeal was whether the State's use of an in-life photograph was unfairly prejudicial. *Lee*, No. 49158-3-II, slip op. at 17. To the extent Lee is raising this same issue again, we do not address it because it was raised and addressed on the merits. *Davis*, 152 Wn.2d at 671. But the issue of whether the in-life photograph should have been used in closing argument because it was an old photograph that did not accurately portray Carter is a different issue that has not been addressed on the merits. Accordingly, we consider that issue here.

This photograph, which the State apparently presented at the beginning and the end of the State's closing argument, was admitted as an exhibit during Barber's testimony without any objection by defense counsel.[10] *See Lee*, No. 49158-3-II, slip op. at 17. When the photograph was introduced during Barber's testimony, the jury heard Barber testify that the photograph was about 15 years old and that Carter became "maybe a little thinner, a little grayer and balder" by the time of his death. 3 VRP at 355. Defense counsel objected to the use of the in-life photograph as part of the State's closing argument, but he argued only that the use of this photograph in closing argument appealed to the jury's passion and prejudice and that the photograph had already been admitted. The trial court overruled the objection.

At no point did defense counsel object to the admission or use of the in-life photograph on the grounds that the photograph was outdated. Because Lee did not object to this photograph on the grounds he now raises, he has waived any potential error unless he can demonstrate that "the prosecutor's [alleged] misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61.

Although the photograph apparently depicted a younger and healthier Carter, the jury was aware that the photograph was old, and Lee does not show how any potential harm caused by presenting an outdated photograph could not have been cured by again reminding the jury that the photograph was not a photograph of Carter around the time of his death. Accordingly, Lee has waived this prosecutorial misconduct claim, and we do not address it further.

---

[10] Lee does not appear to be challenging the admission of this photograph.

## D. RESTRAINT ARGUMENT

Lee further contends that the State committed prosecutorial misconduct by arguing that the evidence showed that Carter had been restrained.[11] He appears to assert that this argument was not supported by the evidence because Burnam's testimony was speculative and not based on an adequate factual basis and the medical examiner's testimony contradicted Burnam's testimony.

At trial, Lee objected to Burnam's testimony regarding what had caused the injury to the area below Carter's breast bone as speculative. The trial court overruled Lee's objection, so Burnam's testimony was properly before the jury. On appeal, we held that Burnam's testimony was not speculative, that it was based on sufficient foundational facts, and that it was properly admitted. *Lee*, No. 49158-3-II, slip op. at 10. And Lee does not show that reconsideration of these holdings is in the interest of justice. *Davis*, 152 Wn.2d at 671.

The State is permitted to argue the facts in evidence and reasonable inferences from that evidence. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). Furthermore, the fact there is contradictory evidence in the record merely creates a question of fact, it does not prevent a party from presenting argument based on other facts in evidence. Burnam's testimony was admitted into evidence, so the State did not improperly argue this evidence in its closing argument. Accordingly, Lee does not demonstrate that the State's argument was improper and this prosecutorial misconduct claim fails.

---

[11] Lee appears to raise this argument twice in his prosecutorial misconduct claims numbered 3 and 6.

E. PHOTOGRAPHS OF BED SORES

Lee next argues that the State engaged in misconduct by presenting the pictures of Carter's bedsores, including "the coroner[']s picture of [Carter's] backside cut off," in closing argument.[12] PRP at 47. He appears to argue that the use of these photographs was improper because they were not accurate representations of the sores since the photographs were taken after Carter received medical attention. This argument fails.

The paramedic and the doctor treating Carter testified that his bed sores were very large, some as large as the paramedic's hand. The paramedic viewed these sores before Carter reached the hospital. And Burnam testified that when she photographed the injuries, Carter had just been moved to the intensive care unit and that it would have been unusual for the ambulance personnel to have done anything to the wounds. The doctor also testified that at the time she examined Carter in the intensive care unit, the wounds were so deep that "[t]here was not much left of the buttocks at all." 4 VRP at 485. Thus, the record shows that the photographs taken by Burnam in the intensive care unit showed the wounds in their original state, not after treatment.

To the extent Lee is arguing that it was improper for the State to show the medical examiner's photographs because they documented the injuries post-treatment, that argument also fails. Although the medical examiner potentially showed the injuries post-treatment, these photographs documented the extent of the injury, not just what was clearly visible to Lee, and were relevant to the cause of death.

_____

[12] Lee also suggests that these photographs were the only evidence of the cause of death. This is incorrect. The medical examiner testified that the cause of death was sepsis caused by the bed sores.

Because the use of these photographs was not improper, Lee does not establish prosecutorial misconduct on this ground.

F.  USE OF ADDITIONAL PHOTOGRAPHS

Lee next appears to argue that the State improperly introduced additional photographs after the trial court had ruled that the State could present only 12 photographs.  This argument fails.

On the first day of trial, the trial court addressed Lee's motion to exclude most, but not all, of the State's photographs of Lee's injuries and directed the State to select the photographs it intended to rely on and confer with Lee's counsel so they could address each photograph individually.  At the next hearing, the trial court admitted 13 of the 20 photographs of Carter's injuries that Lee had objected to on ER 403 grounds subject to the State establishing foundation.[13]

During Burnam's testimony, the trial court admitted exhibits 32 through 48 and 79, a total of 18 photographs of Carter's injuries, after addressing Lee's foundation argument.[14]  During the medical examiner's testimony, the trial court admitted exhibits 49 and 50, two more photographs of Carter's injuries, after addressing Lee's foundation argument.

Thus, the record does show that a total of 20 photographs of Carter's injuries were admitted, not just 13.  But we cannot tell from the record before us whether any of the 20 photographs were among the photographs that Lee did not object to under ER 403.  And Lee does not specify which of these exhibits were not among the 13 photographs that the trial court admitted

---

[13] In this ruling, the trial court referred to each photograph by number.

[14] We note that the exhibit numbers referred to when the trial court admitted these photographs and the exhibit numbers referred to when the photographs admitted during the medical examiner's testimony were not the same.

subject to the State's establishing foundation. Without more information, we cannot address Lee's argument. Accordingly, this prosecutorial misconduct claim fails.

## G. REPETITION OF JURY INSTRUCTIONS

Lee further argues that the State engaged in misconduct by repeating the jury instructions to the jury during closing argument after the trial court had already read the instructions to the jury. He contends that the State's reading of the jury instructions "insinuate[ed]" how the jury was supposed to answer the verdict forms and may have affected its verdict. PRP at 48. This argument fails.

Although the State may not misstate the law in closing argument, it may argue the facts in relation to the law. *See State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). In describing the jury instructions, the State was ensuring that it was arguing the facts in relation to the law as presented to the jury in those instructions. Because this was proper argument, Lee does not establish prosecutorial misconduct on this ground.

## H. IMPROPER USE OF MEDIA

Lee also appears to argue that the State engaged in prosecutorial misconduct by "us[ing] the news media to promote their agenda, insinuating all kinds of abuse, portraying me as a murderer." PRP at 46. Because Lee does not support this claim with anything beyond his bare assertions and references to defense counsel's apparent belief that the charges were "political," this prosecutorial misconduct claim fails.

## VI. SPEEDY TRIAL

Lee next argues that his speedy trial rights under CrR 3.3 were violated. This argument was raised and addressed in Lee's direct appeal and cannot be raised again in this petition, absent a showing that the interests of justice require it. *Davis*, 152 Wn.2d at 671; *Lee*, No. 49158-3-II, slip op. at 8-9. Lee makes no such showing. Accordingly, this argument fails.

## VII. MOTIVATION

Lee further argues that the State improperly claimed that the motive for the crimes was money. But while he presents a different perspective on his relationship with Carter, Lee does not demonstrate that the State acted improperly in claiming money received by Lee for Carter's care as a motive for the crimes. Accordingly, this argument fails.

## VIII. DENIAL OF APPELLATE BOND

Lee argues that the trial court erred in denying him bail pending appeal. But since Lee's direct appeal has been concluded, there is no relief that we can grant regarding this claim of error.

## IX. EXCESSIVE SENTENCE

Lee also argues that the duration of his sentence is excessive. But Lee's sentence was within the standard sentencing range for second degree murder, so he cannot seek review of it unless he shows that the sentencing court failed to comply with the procedural requirements of the Sentencing Reform Act of 1981, ch. 9.94A RCW, or constitutional requirements. *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006); RCW 9.94A.585(1). Because Lee fails to make such a showing here, this argument fails.

## X. SUFFICIENCY

Finally, Lee argues that the State did not present sufficient evidence that he committed second degree felony murder. We disagree.

The State charged Lee with second degree felony murder based on Lee having committed second degree criminal mistreatment that resulted in Carter's death. RCW 9A.32.050(1)(b); former RCW 9A.42.030(1) (2006). A person entrusted with the physical custody of a dependent person or who has assumed the responsibility to provide to a dependent person the basic necessities of life commits second degree criminal mistreatment if he or she recklessly causes substantial bodily harm by withholding any of the basic necessities of life. Former RCW 9A.42.030(1). While Lee disputes it, the State presented sufficient evidence that Lee (1) had been entrusted with the physical custody of Carter, (2) had assumed responsibility for providing Carter with the basic necessities of life, including health care, (3) recklessly caused Carter substantial bodily harm in attempting to treat Carter's pressure sores and in failing to obtain timely medical care, and (4) this mistreatment caused Carter's death. Thus, the State presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Lee had committed second degree felony murder by committing second degree criminal mistreatment. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

## XI. FREESTANDING ACTUAL INNOCENCE CLAIM

Finally, Lee argues that he is actually innocent of the offense. Even presuming, but not deciding, that Lee can raise a freestanding actual innocence claim, his argument fails because he cannot even meet the standard required for a less onerous gateway actual innocence claim.

Actual innocence applies when a petitioner is factually innocent of the crime of conviction. *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). Assuming that Lee can raise a freestanding actual innocence claim, it is clear that he must establish more than what is required for a gateway actual innocence claim. *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). To meet the standard for a gateway actual innocence claim, Lee must, at a minimum, "'go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'" *Id.* (quoting *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)).

Lee's actual innocence argument appears to rely, in part, on the fact that he did not know that Carter previously had septicemia. But as discussed above, Lee has failed to present any admissible evidence establishing that Carter had a prior bout of septicemia or that a prior infection in any way contributed to Carter's demise, so Lee has failed to support this claim.

Lee also argues that he is actually innocent because Carter's death certificate states that he died of "'natural causes.'" Suppl. PRP at 2. But at trial, the medical examiner explained that a death caused by natural causes merely means that the death was not caused by a significant external event, such as a blunt force injury inflicted by a baseball bat or a sharp force injury inflicted by a knife. The fact that Carter died from a natural cause, namely septicemia, does not mean that infection itself was not caused by criminal mistreatment. Accordingly, Lee's actual innocence claim fails.

No. 52170-9-II

Lee does not present grounds for relief from restraint. We therefore deny his petition and deny his request for appointment of counsel.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

SUTTON, J.

28