# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF: | ) ) ) | No. 81221-1-I |
| AARON CHUNG, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | |

ANDRUS, A.C.J. -- In this personal restraint petition, Aaron Chung seeks relief from his conviction for assault of a child in the third degree. Chung asserts that his trial counsel was ineffective in failing to object to the State's use of a peremptory strike to remove an Asian-American juror and in failing to interview or present the testimony of certain witnesses. Chung further asserts a reversible confrontation clause violation. Because Chung has not established that defense counsel provided constitutionally inadequate representation or that his constitutional right to confrontation was violated, we deny his personal restraint petition.

## FACTS

Aaron Chung and his ex-wife, Stacie Ly, have three children together. After their divorce, Chung moved back in with his parents. Chung saw his children on Wednesdays and every other weekend. Chung's parents, I-Lin Chung and Sue Chung, helped care for the children during their visits.

In February 2016, Chung's children were spending the weekend with Chung at their grandparents' house. Chung's daughter, J.C., was six years old and Chung's

sons, K.C. and L.C., were three and four years old at the time. J.C. testified at trial that Chung took her aside in a hallway and accused Ly of stealing money from him. J.C. said "that's not true" and called her father a liar. J.C. said Chung responded by punching her in the forehead, causing her to fall backwards and hit her head on the hardwood floor. When J.C. got back to her feet, Chung told her not to tell anyone what happened. J.C. subsequently told the investigating detective that her grandparents were standing behind Chung when the incident occurred and that they "didn't help me at all." J.C. said her younger brothers tried to help her by punching and kicking Chung's legs, but he gave them a timeout.

Ly testified that the following day, J.C. started crying while waiting for the school bus. When Ly asked J.C. what was wrong, J.C. said her head hurt because "Daddy punched me." Later that day, J.C.'s pediatrician Dr. Joyce Wu, diagnosed J.C. with a head injury without loss of consciousness and a concussion. Dr. Wu testified that her diagnosis was based on J.C.'s reports of a persistent headache, taking an unusually lengthy nap, and crying at the bus stop. Dr. Wu testified that her physical examination of J.C. was predominately normal and that she saw no need for a radiological exam. Dr. Wu reported Chung to Child Protective Services (CPS).

Dr. Katherine Koss, a doctor who conducted a follow-up examination of J.C. about a week later, testified that J.C.'s headache had persisted and that Ly reported J.C. was sleeping more than usual. Dr. Koss agreed that J.C.'s symptoms were consistent with concussion. Bellevue Police Detective Ellen Inman and forensic child

interview specialist Shana McLeod also testified regarding J.C.'s description of the incident.

Chung's father, I-Lin Chung, disputed J.C.'s version of events. He testified that nothing unusual occurred during the visit, he did not hear or observe the incident J.C. described, J.C. seemed fine when she left, and he did not observe any signs that J.C. had suffered a head injury.

The State charged Chung with second degree assault of a child. At trial, the State also requested a lesser included offense instruction on third degree assault of a child. During closing, defense counsel argued that J.C.'s testimony regarding her grandparents' and brothers' behavior during the incident was not credible or reliable and that the physical medical finding of no bruises or bumps was not consistent with the assault charge.

The jury found Chung not guilty of second degree assault, and convicted him of the lesser included charge of third degree assault. In addition to sentencing Chung to 10 days in jail and 10 days of community service, the court prohibited Chung from having any contact with his children for five years, subject to modification and review based upon future progress in family court proceedings.

On direct appeal, this court rejected Chung's claim that his counsels' performance was deficient because they did not request a lesser included offense of fourth degree assault, but remanded for resentencing regarding the scope and duration of the no contact orders pertaining to Chung's children. State v. Chung, No. 76650-3-I, slip op. at 1 (Wash. Ct. App. Jan 14, 2019) (unpublished),

No. 81221-1-I/4

https://www.courts.wa.gov/opinions/pdf/766503.pdf. This timely personal restraint petition followed.

ANALYSIS

To successfully challenge a judgment and sentence by means of a personal restraint petition, a petitioner must establish either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). If a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he or she has necessarily met the burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

A. Ineffective Assistance of Counsel

Chung asserts that he received ineffective assistance of counsel in several instances during his trial.[1] Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674

---

[1] Because this court considered and rejected Chung's ineffective assistance of counsel claim, on direct appeal, the State argues that we should decline to revisit the issue on collateral attack. A personal restraint petition is not a means by which to relitigate issues already adjudicated on the petitioner's direct appeal. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 491, 965 P.2d 593 (1998). A petitioner may not create a novel ground for relief simply by alleging different facts, asserting different legal theories, or phrasing the argument differently. In re Pers. Restraint of Lord, 123 Wn.2d 296, 329, 868 P.2d 835 (1994). Because the basis of the claims Chung now raises are wholly distinct from the claim raised on direct appeal, we will consider the substance of his new claims.

-4-

(1984). To establish ineffective assistance of counsel, a defendant must demonstrate: (1) representation falling below an objective standard of reasonableness and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The inquiry ends if a defendant fails to establish either element. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). We strongly presume that counsel's conduct was reasonable, and so the defendant bears the burden of proving that the challenged action was not a legitimate trial strategy. Strickland, 466 U.S. at 689; State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Juror Exclusion

Chung argues that his trial attorneys were deficient because they failed to object to the State's use of a peremptory strike to remove Juror 3, who Chung asserts was the sole Asian-American juror. He contends that the empaneled jury appeared to include no racial diversity and did not represent a jury of his peers.

"The Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." Batson v. Kennedy, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Under Batson, courts apply a three-part test to determine the propriety of a peremptory challenge. Id. at 96-98. First, the defendant must make

out a prima facie case of racial discrimination. Id. at 96-97. "[I]n Washington, this first step of the Batson test also includes a bright-line rule that the trial court *must* recognize a prima facie case of discriminatory purpose when a party strikes the last member of a racially cognizable group." State v. Jefferson, 192 Wn.2d 225, 232, 429 P.3d 467 (2018) (citing City of Seattle v. Erickson, 188 Wn.2d 721, 734, 398 P.3d 1124 (2017)). Second, if the defendant establishes a prima facie case, the burden shifts to the State to provide a race-neutral explanation for the challenge. Batson, 476 U.S. at 97. Third, the trial court would have determined whether an objective observer, aware of the history of explicit race discrimination in America and aware of how that impacts our current decision-making in implicit ways, could view race or ethnicity as a factor in the use of the peremptory challenge. Jefferson, 192 Wn.2d at 249-50.

Chung has not provided the Court with a transcript or a recording of the voir dire or any of the juror questionnaires the trial court used. From what the parties have provided, we cannot conclude that counsel could have made a prima facie case of racial discrimination or that counsel's decision not to raise a Batson challenge to Juror 3 was deficient performance. First, while the parties appear to agree that Juror 3 identified herself in voir dire as having been born in Taiwan and may have been the only Asian-American in the venire as Chung indicates in his declaration, there is evidence that this juror would not have necessarily been sympathetic to Chung. In Juror 3's jury questionnaire, the juror checked "somewhat agree" to two statements: "I think that when a child makes an accusation of abuse, it probably happened" and "Anyone who ends up being charged with child abuse is probably guilty." According to

the State, Chung's counsel had the assistance of a jury consultant during voir dire. It is quite probable that defense counsel, in discussing Juror 3 with the jury consultant, chose not to object to the removal of Juror 3 under Batson because of these questionnaire responses. Without seeing how other jurors answered these same questions in the written questionnaires, or reviewing how other jurors answered questions orally during jury selection, we cannot conclude there was deficient performance.

In addition, Chung must establish that had counsel made a Batson objection, there is a reasonable probability the objection would have been sustained and the trial judge would have denied the peremptory strike. Chung has not made this showing. During questioning, Juror 3 indicated the juror had "different thinking" about child discipline because spanking was more accepted in Taiwan where she was raised. State Br. at 8. Based on this limited record, the State could have chosen to strike Juror 3 because of the juror's apparent agreement with corporal punishment—a race-neutral reason for exercising the peremptory. It is not clear here that the trial court would have sustained a Batson challenge. Under these circumstances, Chung has not overcome the presumption of competent representation during jury selection.

Witness Testimony

Chung asserts multiple instances of ineffective assistance of counsel arising from counsel's failure to properly investigate or call certain witnesses. None of Chung's claims require reversal.

"Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics." Davis, 152 Wn.2d at 742. However, "[f]ailure to investigate or interview witnesses, or to properly inform the court of the substance of their testimony, is a recognized basis upon which a claim of ineffective assistance of counsel may rest." State v. Ray, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). "[A] defendant seeking relief under a 'failure to investigate' theory must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." Davis, 152 Wn.2d at 739. " '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " Matter of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017) (quoting Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)).

Chung first argues that his trial attorneys failed to present expert testimony to rebut the testimony of J.C.'s treating physicians' concussion diagnosis. According to Chung's declaration, his trial attorney consulted with Dr. Steven Gabaeff, who was unable to rule out concussion. Chung does not appear to argue that defense counsel should have offered Dr. Gabaeff's expert testimony. Rather, he contends that Dr. Gabaeff was not an appropriate expert and that his defense counsel should have engaged a pediatric neurologist instead. In support of this conclusion, Chung offers the declaration of Dr. Anthony Chaffee, who opined in pertinent part as follows:

> I do not agree that a definitive diagnosis of concussion can be given, based on the objective signs and symptoms. While a headache can indeed be a sign of a concussion, it is by no means pathognomonic for a concussion, meaning there are many other potential causes of headache.
>
> Dr Wu examined and palpated [J.C.'s] head and found no injury, bumps, or pain (RP 370-72). Also, in the medical notes Dr. Wu states that [J.C.'s] mood and affect were normal and appropriate, though she stated part of her diagnosis of concussion was due to altered emotional state (RP 356-57), showing that the criteria used was purely subjective reporting, not objective observations or as part of an examination.

Chung contends that Dr. Chaffee's expert testimony would have been critically important to the jury's informed decision making. However, Dr. Chaffee's declaration does not indicate he is a pediatric neurologist. In fact, the declaration provides nothing more than the following description of his training, education and experience:

> I am trained as a medical doctor and have worked in that field since …. 2013. [training, experience & credentials]. Having received my medical training at the Royal College of Surgeons, and working, volunteering, and engaging in humanitarian work in America, Europe, Bangladesh, and Australia in such fields as Emergency, Trauma, and Neurosurgery.

We cannot determine from this rather cryptic description of his medical training and experience whether Dr. Chaffee was any more qualified to assess J.S.'s diagnosis than was Dr. Gabaeff.

Furthermore, Chung has not demonstrated prejudice. The State relied on Dr. Wu's diagnosis of concussion to establish that Chung "inflicted substantial bodily harm" as required to convict him of assault of a child in the second degree. However, the jury convicted Chung of the lesser included crime of assault of a child in the third degree, which requires only proof of "bodily harm." Thus, we agree with the State that whether or not J.S. sustained a concussion was immaterial to his conviction. Chung

has not demonstrated that his attorneys were deficient, or that the result of the proceeding would have been different if Dr. Chaffee had testified.

Next, Chung asserts that his trial attorneys were ineffective for failing to present the testimony of Sui Shen Hong. According to the notes of Hong's interview by defense investigator Karen Sanderson, Hong is acquainted with Chung's mother through the Chinese community and some business dealings. Hong stated that on six or seven occasions, she assisted Chung's father in dropping off Chung's kids at Ly's home. The notes show that Hong said:

> Last time – thought it was in the evening. Kids in back. Could have been sleeping, didn't really check on them. No one said anything – no one complaining. Didn't see any bruises or anything unusual. Oldest got herself out of the car and walked up to house fine. Didn't notice anything.

Chung argues that Hong's testimony would have been critical to establishing that J.C. was not exhibiting any symptoms of concussion before leaving Chung's custody and returning to her mother's care. However, the interview notes also indicate that Hong did not observe the children closely during the trip. And Hong's observations that J.C. had no bruises and was able to walk the short distance from the car to the front door were not inconsistent with other undisputed facts in evidence.

Chung further contends that defense counsel's basis for excluding this testimony – to avoid revealing that Hong drove the children because a protection order barred Chung from approaching Ly's home – was not a reasonable strategic decision. Given that Hong's testimony was not particularly material, defense counsel was not unreasonable in moving to exclude it. Chung can show no resulting prejudice.

Next, Chung asserts that his trial attorneys were ineffective for failing to interview and present the testimony of Chung's mother, Sue Chung. Chung contends that his mother's testimony would have been critical and relevant to rebut J.C.'s claim that her grandparents did not help or respond in any way to the assault she described. But Chung's counsel did present testimony from Chung's father I-Lin Chung, who stated that nothing unusual occurred during the visit and that J.C. seemed fine. If Chung's mother agreed, her testimony would have been cumulative at best. Moreover, Chung provided no declaration from his mother establishing what beneficial information she would provide if called to testify. Without this showing, Chung cannot establish prejudice. See State v. Sherwood, 71 Wn. App. 481, 484, 860 P.2d 407 (1993).

Chung further asserts that his mother could have provided significant impeachment testimony regarding a prior incident in which Sue Chung alleged that Ly had assaulted her during an exchange of the children. But the admission of such impeachment evidence would have opened the door to multiple alleged acts of domestic violence and intimidation committed by Chung, including Chung's plea of guilty to a charge of malicious mischief for punching a hole in the wall in front of the children during an argument with Ly and the subsequent entry of a domestic violence protection order. Because Chung has not shown that his mother's testimony would have been exculpatory, relevant, or admissible, he has not demonstrated deficient performance or prejudice.

Next, Chung asserts that his counsel was ineffective for failing to pursue the theory that Ly, not Chung, assaulted J.C. or lied about Chung having done so. Chung points to discrepancies in the State's evidence, including J.C.'s inability to remember precise dates and times and whether or not her grandparents were in the room during the incident. Chung also points to notes taken by his defense investigator during interviews with his divorce attorney Kelly Faoro and his friend Paul Konishi. Notes from Faoro's interview indicate that Faoro called Ly a devious and conniving liar who hid money and controlled the children. Notes from Konishi's interview describe an incident in which Ly was irate that Konishi had returned the children late and that she complained that Chung was stealing money from her and her family.

Chung claims this evidence demonstrates that Ly had a motive to falsely accuse Chung and that J.C.'s alleged injuries actually occurred in Ly's care. We are not persuaded that this evidence makes it more or less likely that Ly assaulted J.C. or lied about what J.C. reported. Moreover, as previously discussed, such evidence would have opened the door to introducing evidence of Chung's involvement in prior domestic violence incidents. Defense counsel acted reasonably in keeping such evidence out of the trial.

Confrontation Clause

Chung argues that his constitutional right to confront the witnesses against him was violated by the admission of testimonial hearsay. Specifically, the trial court permitted Department of Social and Health Services (DSHS) social worker Wendy House to testify regarding the CPS investigation of the incident, which was conducted

by a former DSHS employee. The State does not challenge Chung's argument that the evidence was testimonial hearsay. Instead, the State claims that the admission of this hearsay evidence constituted harmless error. We agree with the State.

We review alleged confrontation clause violations de novo. State v. Burke, 6 Wn. App. 2d 950, 964, 431 P.3d 1109 (2018). Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, accused persons have the right to confront the witnesses against them. The confrontation clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless [s]he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (quoting Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

Confrontation clause violations are subject to harmless error analysis. State v. Watt, 160 Wn.2d 626, 635, 160 P.3d 640 (2007). A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. Id. In making this determination, this court "looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." Id. at 636.

We are convinced that the error of admitting House's testimony was harmless. House testified that Dr. Wu made the CPS referral, that she contacted certain members of Chung's family, and that she was given access to medical information provided by

the treating physicians. She did not reveal any substantive or inculpatory details regarding the CPS investigation. And the jury was already aware of CPS's involvement via Dr. Wu's testimony.

Chung has not met his burden to demonstrate actual and substantial prejudice arising from constitutional error. Therefore, his petition must be denied.

_Andrus, A.C.J._

WE CONCUR:

_Coburn, J._          _Chung, J._